(No. 47576.— )

THE PEOPLE *ex rel.* PEORIA CIVIC CENTER AUTHORITY, Petitioner, v. DONALD F. VONACHEN, Respondent.

*Opinion filed Nov. 25, 1975.—Rehearing denied Jan. 22, 1976.*

CREBS, J., took no part.

Jack B. Teplitz, of Peoria (Borge and Pitt, Charles P. Carlson, Robert M. Star, Boodell, Sears, Sugrue, Giambalvo & Crowley, Kai Allen Nebel, and Wayland B. Cedarquist, all of Chicago, of counsel), for petitioner.

Homer W. Keller and Ross E. Canterbury, of Westervelt, Johnson, Nicoll & Keller, of Peoria, for respondent.

PER CURIAM: This is an original petition for a writ of *mandamus* to direct the respondent, Donald F. Vonachen, the chairman of the Peoria Civic Center Authority, to execute certain bonds authorized under the Metro-East Exposition and Performing Arts Authority Act. Pub. Act 78–1289; S.H.A. (1975), ch. 85, par. 1501 *et seq.* (hereafter Metro-East Act).

Prior to the passage of the Metro-East Act, the legislature had enacted the Springfield Metropolitan Exposition and Auditorium Authority Act (1965) (Ill. Rev. Stat. 1973, ch. 85, par. 1251 *et seq.*), the Rockford Civic Center Act (1969) (Ill. Rev. Stat. 1973, ch. 85, par. 1331 *et seq.*), the Peoria Civic Center Act (1973) (Ill. Rev. Stat. 1973, ch. 85, par. 1441 *et seq.*), and the Aurora Civic Center Act (1973) (Ill. Rev. Stat. 1973, ch. 85, par. 1401 *et seq.*). In general, the authorities established under these statutes are empowered to construct, purchase, or lease facilities which will promote cultural and civic development in their geographical areas. (See, *e.g.*, Ill. Rev. Stat. 1973, ch. 85, par. 1444.) To finance these projects each authority was granted the power to issue bonds, which were to be payable from revenues derived from the operations of the authority (see, *e.g.*, Ill. Rev. Stat. 1973, ch. 85, par. 1449) and from *ad valorem* taxation (see, *e.g.*, Ill. Rev. Stat. 1973, ch. 85, pars. 1448, 1450). Each authority was also authorized to receive certain funds held in the Metropolitan Exposition, Auditorium and Office Building Fund (Ill. Rev. Stat. 1973, ch. 85, par. 1394).

The Metro-East Act establishes a similar authority for the area composed of Madison and St. Clair counties (Pub. Act 78—1289, sec. 1(g); S.H.A. (1975), ch. 85, par. 1501(g)). The Act also provides an additional method of financing for all five of the authorities. This financing method allows for the issuance of bonds which would be payable from sums to be appropriated by the legislature from the Auditorium Authority Fund. Pub. Act 78—1289, sec. 7; S.H.A. (1975), ch. 85, par. 1507.

On September 4, 1974, the Governor returned the Metro-East Act to the Senate with specific recommendations for change affecting four sections of the Act, stating that he was acting pursuant to section 9(e) of article IV of the Constitution of 1970. The legislature accepted the Governor's recommendations, and on January 20, 1975, he certified that the legislature's acceptance or adoption

conformed to his specific recommendations. The legislature subsequently declared the effective date for the Act to be April 15, 1975 (Pub. Act 19—26). This bill was signed by the Governor on May 16, 1975.

The city of Peoria adopted three ordinances on May 19, 1975, which authorized the issuance of $15,000,000 in revenue bonds pursuant to authority granted in the Metro-East Act (Pub. Act 78—1289, sec. 7(c); S.H.A. (1975), ch. 85, par. 1507(c)). The commissioners of the Peoria Civic Center Authority directed the respondent, Donald F. Vonachen, the chairman of the Authority, to execute the bonds. He refused to do so on grounds we shall consider in this opinion. We granted leave to the Peoria Civic Center Authority to file a petition for writ of *mandamus* to compel the respondent to execute the bonds.

A number of contentions are made by the respondent in defense of his refusal to execute the bonds, and one of them, we judge, is dispositive of this action. It is that a portion of the Act (though the portion we rely on is not the one on which the respondent bases his argument) violates that part of section 8(d) of article IV of the Constitution which provides:

> "A bill expressly amending a law shall set forth completely the sections amended."

The very title of the Metro-East Act shows it is providing additional financing methods for the Springfield, Rockford, Peoria and Aurora Authorities, and section 1(b) of the Act sets out the statutes which created the Authorities.

The respondent, however, has overlooked what to us are palpable violations of the portion of section 8(d) of article IV of the Constitution that we are considering. The very title of the Metro-East Act shows it is providing additional financing methods for the Springfield, Rockford, Peoria and Aurora Authorities, and section 1(b) of the Act sets out the statutes which created the Authorities.

The title to the Act reads:

"An Act to provide for an Exposition and Performing Arts Authority in Madison and St. Clair Counties and to define its powers and duties and to provide additional financing methods for the Springfield Metropolitan Exposition and Auditorium Authority, the Rockford Metropolitan Exposition, Auditorium and Office Building Authority and the Peoria Civic Center Authority and to provide additional financing methods for the Aurora Metropolitan Exposition, Auditorium and Office Building Authority."

Section 1(b) reads:

"(b) 'Authorities' means those Authorities created by each of the following Acts: the 'Springfield Metropolitan Exposition and Auditorium Authority Act,' approved August 9, 1965, as amended; the 'Rockford Civic Center Act,' approved October 7, 1969; and the 'Peoria Civic Center Act' enacted by the 78th General Assembly. 'Aurora Authority' means the Authority created pursuant to the 'Aurora Civic Center Act,' approved June 7, 1970, as amended."

The Metro-East Act must be held to expressly amend the statutes which created the Springfield, Rockford, Peoria and Aurora Authorities.

Section 7 of the Act specifically authorizes the Aurora Authority to borrow money and issue bonds in an amount not to exceed $10,000,000 for the purposes contained in the Aurora Civic Center Act. The section goes on to state that the Springfield, Rockford, and Peoria Authorities are also specifically authorized to borrow money and issue bonds for the purposes set .out in the respective acts creating those Authorities. Section 9 of the Metro-East Act provides in part that the Authorities shall have the continuing power to borrow money for the purpose of carrying out and performing their duties and exercising powers under the Metro-East Act or the Springfield, Rockford, Peoria or Aurora Acts respectively, and it authorizes all of the Authorities pursuant to ordinances which may be adopted by their boards to issue and dispose of their interest-bearing revenue bonds.

We must conclude Public Act 78—1289, *i.e.,* the Metro-East Act, not only creates an Exposition and Performing Arts Authority in Madison and St. Clair Counties, but it also, in providing "additional financing methods" for the Springfield, Rockford, Peoria and Aurora Authorities, operated to expressly amend the acts which created those Authorities without setting forth completely the sections amended. This was in violation of our constitution's requirement (art. IV, sec. 8(d)).

The invalid portions of the Act cannot be severed from those which are valid. We said in *Fiorito v. Jones,* 39 Ill.2d 531, 540:

> "The settled and governing test of severability is whether the valid and invalid provisions of the Act are 'so mutually "connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently ***".' (*Winter v. Barrett,* 352 Ill. 441 at page 475.) The provisions are not severable if 'they are essentially and inseparably connected in substance.' *People ex rel. Dougherty v. City of Rock Island,* 271 Ill. 412 at page 422; see also, *Ohio Oil Co. v. Wright,* 386 Ill. 206; *Springfield Gas and Electric Co. v. City of Springfield,* 292 Ill. 236."

We consider the legislature intended all of the provisions of the Act as a whole piece of legislation, and therefore the whole act must fall.

For the reason given, the petition for a writ of *mandamus* is denied.

*Writ denied.*

MR. JUSTICE CREBS took no part in the consideration or decision of this case.