(No. 47900.-

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. SPENCER SCHWARTZ, Appellee.

*Opinion filed October 1, 1976.*

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel and Jayne A. Carr, Assistant Attorneys General, and Laurence J. Bolon and David A. Novoselsky, Assistant State's Attorneys, of counsel), for the People.

Rizzi & Rathsack, of Chicago (Dom J. Rizzi and Michael W. Rathsack, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

Defendant, Spencer Schwartz, an attorney, was charged with requesting and partly receiving compensation for placing out a child for adoption in violation of the Adoption Act (Ill. Rev. Stat. 1973, ch. 4, par. 12—5). The circuit court of Cook County granted defendant's motion to dismiss the complaints on the ground that section 12—1 of the Adoption Act is unconstitutional. The circuit court also found that the complaints in question were "defective and, therefore, void." A direct appeal to this court was taken pursuant to our Rule 302(a). 58 Ill. 2d R. 302(a).

The basis of the circuit court's finding of unconstitutionality was its determination that section 12—1 is vague, uncertain and overbroad. Section 12—1 provides:

"No person and no agency, association, corporation, institution, society, or other organization, except a child welfare agency as defined by the 'Child Care Act' *** shall request, receive or accept any compensation or thing of value, directly or indirectly, for placing out of a child."

Section 12—3 of the Act defines the term "placing out."

"As used in this Act the term 'placing out' means to arrange for the free care of a child in a family other than that of the child's parent, stepparent, grandparent, brother, sister, uncle or aunt or legal guardian, for the purpose of adoption or for the purpose of providing care."

The circuit court specifically found that the phrases "placing out of a child," "arranging for the free care" and "for the purpose of providing care" were so obscure that they failed to set forth constitutionally sufficient standards of conduct. The circuit court also found the statute defective for the reason that it failed to define the word "child."

Though this is the first case to test the constitutionality of the statutes in question, the principles involved are well settled. A criminal statute violates the requirement of due process of law if it fails to adequately give notice as to what action or conduct is proscribed. (*People v. Vandiver* (1971), 51 Ill. 2d 525.) Impossible standards of specificity, however, are not required. (*Jordan v. De George* (1951), 341 U.S. 223, 231, 95 L. Ed. 886, 71 S. Ct. 703; *People v. Dednam* (1973), 55 Ill. 2d 565.) As stated by Mr. Justice Marshall, "Condemned to the use of words, we can never expect mathematical certainty from our language." (*Grayned v. City of Rockford* (1972), 408 U.S. 104, 110, 33 L. Ed. 2d 222, 228-29, 92 S. Ct. 2294.) When called upon to decide a vagueness question, a court will assume, absent contrary legislative intent, that the words of the statute have their ordinary and popularly understood meanings. (*Farrand Coal Co. v. Halpin* (1957), 10 Ill. 2d 507, 510.) In addition to the language used, consideration is given to the legislative objective and the evil the statute seeks to remedy. (*People v. Dedham*

(1973), 55 Ill. 2d 565.) A statute enjoys a presumption of constitutionality. *Livingston v. Ogilvie* (1969), 43 Ill. 2d 9, 12.

With these principles in mind, we first consider the issue of vagueness. In contending that the statutes in question are vague and indefinite, defendant primarily questions the definition of "placing out" in section 12—3 and the lack of a statutory definition of the word "child." Initially, we find no merit in defendant's contention that the term "placing out" is vague as a result of the inclusion of the phrases "arrange for the free care" and "for the purpose of providing care" in the statutory definition.

Sections 12—1 and 12—3 of the Adoption Act simply provide that only a child welfare agency shall request or receive compensation for the placement of children within families other than those listed in section 12—3. All others are prohibited from acting as paid intermediaries in the adoption process. The obvious purpose of the statute is to prevent profiteering in the placement of children and to eliminate so-called "baby markets" and "baby brokers." The phrase "arrange for the free care" adequately describes the conduct the legislature intended to condemn. The final phrase of section 12—3 prevents circumvention of the legislative goal through informal placement agreements which do not contemplate formal adoption proceedings, but which have the same practical effect. Though it is likely that section 12—3 could have been more clearly drafted, we find no ambiguity which would cause men of ordinary understanding to guess as to the nature of the conduct it defines.

Nor do we consider the lack of a statutory definition of the word "child" to be a fatal defect. The trial court found, from the pleadings and arguments, that the unnamed child in question was unborn, and concluded that it could not be determined whether an unborn child falls within the ambit of section 12—1. The State contends that a popularly understood meaning of the word "child"

includes an unborn offspring. For support, the State cites the dictionary definition of the word (Webster's Third New International Dictionary 388 (1971)).

We consider that the word "child," as used in sections 12—1 and 12—3 of the Adoption Act, was intended to include unborn offspring. Significantly, the Act does not simply prohibit the actual placement of children by an unlicensed person. Rather, it prohibits the request or receipt of compensation for the placing out of a child. The illegal act thus occurs when an unlicensed person offers to serve as a paid agent to either obtain or dispose of a child. The Act as written prohibits an agreement that a fee will be paid for the transfer of a yet unborn child as clearly as an arrangement for the compensated placement of a child in being. We cannot presume that the legislature intended to exempt from section 12—1 placement arrangements in which all steps, save delivery, were completed while the child was in gestation. In our view, the clear import of the statute is that the meaning of the word "child" is not restricted to children in being.

We therefore conclude that the circuit court erred in holding section 12—1 of the Adoption Act unconstitutional due to vagueness. We turn next to the lower court's determination that section 12—1 is unconstitutionally overbroad in its scope.

A statutory enactment, though sufficiently clear and precise to withstand a vagueness attack, may nevertheless be impermissibly overbroad if it may reasonably be interpreted to prohibit conduct which is constitutionally protected. (*Grayned v. City of Rockford* (1972), 408 U.S. 104, 33 L. Ed. 2d 222, 92 S. Ct. 2294.) The court found section 12—1 overbroad for the reason that it unreasonably interfered with an attorney's right to practice law. We do not agree.

Section 12—1, when applied to an attorney, would not infringe upon his or her ability to perform legal

services. The provision merely establishes that an attorney may not act as a paid intermediary or placement agent for a party desiring to buy or sell a child. As such, the statute treats an attorney in the same manner as any other individual who does not qualify for the exemption contained in section 12—1.

We are unimpressed by the argument that a careful and prudent attorney will be unable to determine from sections 12—1 and 12—3 the extent to which he may perform professional services in an adoption case. A similar argument was advanced in *Goodman v. District of Columbia* (D.C. Mun. Ct. App. 1947), 50 A.2d 312, where the court was required to construe a statute similar to the provisions presently in question. The *Goodman* court's response to this contention is equally applicable here:

> "We are told that if defendant is not absolved, no lawyer can feel safe when he is called on to advise or act in an adoption case. \*\*\* But we think the careful lawyer will have little trouble in determining what he may lawfully do in such situations. We think even a cursory reading of the statute will tell him how far he may go and where he must stop.
>
> We think it plain that so long as the lawyer gives only legal advice; so long as he appears in court in adoption proceedings, representing either relinquishing or adopting parents; so long as he refrains from serving as intermediary, go-between, or placing agent; so long as he leaves or refers the placement of children and the arrangements for their placement to agencies duly licensed, he is within his rights under the statute." 50 A.2d at 814-15.

We hold that section 12—1 of the Adoption Act is not unconstitutionally overbroad, and, therefore, reverse the decision of the circuit court on this point.

We turn next to a consideration of the sufficiency of the complaints. In pertinent part, the first complaint read as follows:

"SPENCER SCHWARTZ has, on or about September 4, 1974 at *** committed the offense of Illegal Placement of Children in that he did request from one [name of complainant] compensation (to-wit: approximately $6,500.00 in United States currency) for placing out a child. Furthermore, said SPENCER SCHWARTZ is not a Child Welfare Agency or an authorized representative of said agency and furthermore, $4,500.00 of said compensation is above the reasonable and actual medical fees or hospital charges to be incurred and above the legal expenses to be incurred, in violation of Chapter 4, Section 12–5, ILLINOIS REVISED STATUTES."

The second complaint was substantially similar except that it charged that the defendant had received $500 as a deposit toward the placement.

The circuit court found the complaints defective due to the implied conclusion by the State that $2,000 of the requested compensation was reasonable. The State contends that the allegations regarding these amounts were necessarily included to segregate that portion which was compensation for legitimate legal services from the fee charged for placing out the child for adoption. We reverse the circuit court and hold that the complaints in question are valid.

As previously demonstrated, section 12–1 does not prohibit the receipt of compensation for legitimate legal services performed in an adoption case. Additionally, section 12–4 exempts the payment of medical and hospital charges in certain circumstances. It is thus evident that where a lump sum is paid to an attorney in an adoption case a certain amount may legitimately represent attorney fees and expenses and costs which will be disbursed through the attorney. Thus, the entire amount requested may not represent compensation paid for the placing out of the child. It is, therefore, proper for the complaint to allege that some portion of the requested

amount is in excess of the allowable legal and medical fees, for if the entire fee fell within the exempted categories no violation of the statute would exist. While it was unnecessary for the State to specify the actual dollar amount of the illegal compensation, we do not consider the inclusion of the specific figure to be harmful or prejudicial to the defendant.

Defendant also challenges the sufficiency of the complaints on two grounds not discussed by the circuit court. First, defendant contends that the complaint failed to adequately inform him of the nature of the charges he faced, and, second, that the complaint is defective for its failure to allege intent.

The complaints in question inform the defendant of the nature of the charges with sufficient specificity to withstand defendant's objections. The complaints inform defendant of the date and location of the alleged offense, the name of the complainant and the acts which constitute the offense. A complaint which charges an offense in the terms of the statute is valid if it provides "notice sufficient to prepare an adequate defense and clarity sufficient to allow pleading a resulting conviction [or acquittal] as a bar to future prosecution arising out of the same conduct." (*People v. Grant* (1974), 57 Ill. 2d 264, 267.) The term "placing out" is specifically defined in section 12—3 of the Act. Therefore, charging the offense in the language of the statute adequately informed defendant of the conduct charged against him. In our view, the instant complaints satisfy these requirements.

Finally, we reject defendant's contention that the complaints are defective due to the lack of an allegation of intent. The clear and obvious intent of the legislature, as evidenced by the language of section 12—1, was to impose liability for the offense of requesting or accepting compensation for placing out children.

The judgment of the circuit court is reversed and this cause is remanded for further proceedings.

*Reversed and remanded.*