(No. 52948.—

THE PEOPLE *ex rel.* THOMAS J. DIFANIS, States's Attorney, Appellee, v. JOAN BARR *et al.,* Appellants.

*Opinion filed December 19, 1980.*

192

194

196

WARD and UNDERWOOD, JJ., dissenting.

Arnold F. Blockman, of Hatch, Blockman & McPheters, of Champaign, and James Kuehl, of Finch & Kuehl, of Urbana, for appellants.

Thomas J. Difanis, States's Attorney, of Urbana (Joseph D. Pavia, Assistant State's Attorney, of counsel), for appellee.

Ronald D. Rotunda, of Champaign, for *amicus curiae* Illinois News Broadcasters Association.

William E. Feurer, of William E. Feurer, Ltd., of Springfield, for *amicus curiae* Illinois Press Association.

MR. JUSTICE CLARK delivered the opinion of the court:

Thomas J. Difanis, as State's Attorney of Champaign County, brought a declaratory judgment action against the nine defendants, who are members of the Urbana city council. The plaintiff sought a declaration that the defendants violated the Open Meetings Act (Ill. Rev. Stat. 1977, ch. 102, par. 41 *et seq.*) when, on October 23, 1978, they met and conferred shortly before a special session of the Urbana city council. The circuit court of Champaign County entered judgment in favor of the plaintiff. The appellate court affirmed. (78 Ill. App. 3d 842.) We allowed the defendants' petition for leave to appeal. 73 Ill. 2d R. 315.

The parties entered into a stipulation of facts which reveals that an Urbana city council meeting was scheduled for Monday, October 23, 1978, at 7:30 p.m. On Friday, October 20, 1978, two members of the city council, defendants John Peterson and Bob Hurt, decided to hold a party caucus prior to the city council meeting. The caucus

meeting was scheduled for October 23, 1978, at 6 p.m. in the home of a member of the city council. Attendance at the meeting was voluntary. The nine defendants attended the 6 p.m. meeting. Eight of the defendants are members of the Champaign County Democratic party, and one defendant has no political affiliation. There are 15 members of the Urbana city council, nine of whom are Democrats. Eight persons constitute a quorum of the council.

The meeting was called to discuss matters the city council would consider at its meeting later that night, as well as party matters and an election to be held in November 1978. No agenda was prepared for the 6 p.m. meeting, and no votes were taken. It is further stipulated that the defendants were not meeting as a duly constituted committee of the Urbana city council and they received no compensation for attending the hour-long meeting. One defendant, Donald Wort, arrived approximately 15 minutes before the end of the meeting and participated in a discussion of matters not on the city council agenda. Of the five matters on the formal agenda for the 7:30 p.m. city council session, four were discussed at the 6 p.m. meeting. Three votes were taken at the city council session on matters discussed at the 6 p.m. meeting. On a vote to approve a ward map recommended by a committee of the council, the nine defendants voted as a bloc. The measure thereupon was passed by the council nine votes to four. On the other two votes taken, concerning a community-development-agency appointment and approval of a "planned unit development" project, the defendants did not vote in a uniform manner. The fourth agenda matter discussed at the 6 p.m. meeting concerned the mayor's appointments to the Public Works Commission. The stipulated facts show that the discussion at the 6 p.m. meeting involved "reasons for holding up the Mayor's nominations." This matter was not brought up at the council session. Finally, the defendants stipulated that they have had

"caucuses of this nature in the past and will continue to have caucuses of this nature in the future."

Section 2 of the Open Meetings Act provides in part:

> "All meetings of any legislative, executive, administrative or advisory bodies of the State, counties, townships, cities, villages, incorporated towns, school districts and all other municipal corporations, boards, bureaus, committees or commissions of this State, and any subsidiary bodies of any of the foregoing including but not limited to committees and subcommittees which are supported in whole or in part by tax revenue, or which expend tax revenue, shall be public meetings ***. This Act does not apply to the General Assembly or to committees or commissions thereof." (Ill. Rev. Stat. 1977, ch. 102, par. 42.)

The defendants contend first that the 6 p.m. meeting does not fall within the ambit of the Act. The defendants argue that the meeting was called primarily as a political caucus and not as a formal "meeting" of the city council. We disagree.

Section 1 of the Open Meetings Act states:

> "It is the public policy of this State that the public commissions, committees, boards and councils and the other public agencies of this State exist to aid in the conduct of the people's business. It is the intent of this Act that their actions be taken openly and that their deliberations be conducted openly." (Ill. Rev. Stat. 1977, ch. 102, par. 41.)

This clearly enunciated public policy would be poorly served were we to carve out exceptions other than those expressly stated in the Act (see Ill. Rev. Stat. 1977, ch. 102, par. 42) for informal political caucuses where, as here, public business was deliberated and it appears that a consensus on at least one issue was reached outside of public view. Moreover, an expression of certain exceptions in a statute is construed as an exclusion of all others. *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 557; *City Savings Association v. International Guaranty & Insurance Co.* (1959), 17 Ill. 2d 609, 612; 1971

Ill. Att'y Gen. Op. 51, 53.

Indeed, in 1967 the General Assembly amended the Act to delete the word "official" before the word "meeting" in sections 1 and 2. Palpably, the amendment was intended to include unofficial or informal meetings within the coverage of the Act. In *Sacramento Newspaper Guild, Local 92 v. Sacramento County Board of Supervisors* (1968), 263 Cal. App. 2d 41, 69 Cal. Rptr. 480, a luncheon meeting was held at which several county officials, including the five county supervisors, met privately with labor officials to discuss a strike of the social workers union. Newspaper reporters sought but were denied admission to the gathering. In affirming the trial court's preliminary injunction order except to the extent it prevented attorneys for the county from discussing privileged matters with county officials, the court stated:

> "An informal conference or caucus permits crystallization of secret decisions to a point just short of ceremonial acceptance. There is rarely any purpose to a nonpublic pre-meeting conference except to conduct some part of the decisional process behind closed doors. Only by embracing the collective inquiry and discussion stages, as well as the ultimate step of official action, can an open meeting regulation frustrate these evasive devices. As operative criteria, formality and informality are alien to the law's design, exposing it to the very evasions it was designed to prevent. Construed in the light of the Brown Act's objectives, the term 'meeting' extends to informal sessions or conferences of the board members designed for the discussion of public business. The Elks Club luncheon, attended by the Sacramento County Board of Supervisors, was such a meeting." (*Sacramento Newspaper Guild, Local 92 v. Sacramento County Board of Supervisors* (1968), 263 Cal.

App. 2d 41, 50-51, 69 Cal. Rptr. 480, 487.) Thus, to allow the nine defendants to circumvent the Act simply because they designate their meeting as an informal gathering or informal caucus would be to thwart the intent of the Act.

A related argument raised by the defendants is that the nine defendants do not constitute a "legislative body" or "subsidiary body" which is subject to the Act. This argument misapprehends both the wording of the statute and reality. The statute states that "[a]ll meetings of any legislative, executive, administrative or advisory bodies *** and any subsidiary bodies of any of the foregoing *including but not limited to* committees or subcommittees *** shall be public meetings ***." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 102, par. 42.) We interpret the foregoing to mean that the Act was intended to apply to more than meetings of full bodies or duly constituted committees. Thus, "body" must necessarily be interpreted to mean an informal gathering of nine members of a legally constituted public body. The trial court decided that the Open Meetings Act would apply to meetings of three or more persons. Since the instant case involved nine public officials, we need not and do not make any decision as to whether three persons automatically trigger application of the Act.

It should be emphasized that it is not the province of this court to pass on the wisdom or desirability of legislation. (*Garcia v. Tully* (1978), 72 Ill. 2d 1, 10.) As long as the means chosen by the legislature to achieve a desired end are lawful and inoffensive to the State and Federal constitutions, our inquiry may proceed no further. Thus, whether, as the defendants argue, the instant means chosen by the General Assembly to eliminate secrecy in government and permit the free flow of information to the public might restrict the ability of public officials, either as minority blocs or majority groups, to support or oppose

legislation, is not within our power to alter. The Act, by its express terms, does sacrifice the ability of public officials to act and deliberate privately to what the General Assembly obviously perceives to be the more important governmental interest of opening the processes of government to public scrutiny. Such a legislative judgment is peculiarly within the domain of the General Assembly. While there appear to be obvious problems of enforcement inherent in the Act, that consideration does not render the Act invalid. Nor may it affect our scrutiny of it. The Act is not intended to prohibit *bona fide* social gatherings of public officials, or truly political meetings at which party business is discussed. Rather, the Act is designed to prohibit secret deliberation and action on business which properly should be discussed in a public forum due to its potential impact on the public. Thus, the items discussed in the meeting in the instant case regarding a new ward map, the appointments of public officers for two separate agencies, and a housing development not only concerned public business but were scheduled to be dealt with that very evening. Moreover, the stipulated facts show that several other items discussed that evening were matters that the city council would need to consider sometime in the future, for example, the burning of leaves within city limits, the treatment of cable television, and the possibility of rescinding an ordinance which required an appointed comptroller. Therefore, it is reasonably clear and definite that the meeting at issue in this case violated the intent and the terms of the Open Meetings Act. The defendants have challenged the Act on its face as violative of equal protection and due process of law. We need not consider these broad-based attacks, however. Instead, we will only decide whether, under the narrow facts presented, the Act violates the constitutional rights of these nine defendants.

The first of defendants' four constitutional arguments

is that the Open Meetings Act as applied to defendants denies them the equal protection of the law under the fourteenth amendment to the United States Constitution and article I, section 2, of the Illinois Constitution of 1970. The defendants claim that, since the General Assembly is exempted from coverage under the Act, Democratic members of the General Assembly may attend caucuses without risking prosecution whereas Democratic local officials run the risk of being prosecuted under the Act for attending political caucuses. This argument must fail for the reason that the factual foundation is incorrect. We have previously discussed the subject matter of the 6 p.m. meeting, as set forth in the stipulation of facts. While a few of the matters discussed could be considered political in nature, in that they concerned the November 1971 election and strategy related to that election, we have previously rejected, as did the circuit court, the premise that the meeting was conducted solely, or even primarily, as a political caucus. It clearly was not. Most of the 14 matters discussed concerned city council business. Certainly, a true political caucus is beyond the purview of the Act; the Act comes into play only where public business which could eventually come up for decision before the full body is deliberated or acted upon in private. Thus, the defendants' argument that they could be susceptible to prosecution simply for participating in a political caucus is erroneous.

The defendants argue that the General Assembly, in contravention of its own stated policy of open deliberations and open actions, has exempted itself from coverage under the Open Meetings Act. The defendants further argue that, while a rational relationship to a legitimate governmental interest may exist for making a distinction between the General Assembly and other bodies, any such interest would be subordinated to the General Assembly's stated purpose of conducting public business in the open.

The General Assembly's exemption might appear inconsistent with the public policy behind the Act were it not for article IV, section 5(c), of the 1970 Constitution, which provides:

"(c) Sessions of each house of the General Assembly and meetings of committees, joint committees and legislative commissions shall be open to the public. Sessions and committee meetings of a house may be closed to the public if two-thirds of the members elected to that house determine that the public interest so requires; and meetings of joint committees and legislative commissions may be so closed if two-thirds of the members elected to each house so determine."

The defendants argue that the Constitution only requires that formal sessions be conducted openly and that meetings of committees and commissions need not be open to the public. This argument is incorrect, however. Article IV, section 5(c), expressly requires that sessions, meetings of committees, joint committees and legislative commissions shall be open to the public. It is true that informal meetings of members of the General Assembly are thus not required to be conducted openly. Under the well-established standards regarding equal protection of the laws, the legislature may differentiate between persons similarly situated (*Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 578); equal protection requires only that there be a reasonable and rational basis for the classifications which justify different procedures for treating the two groups. *People v. Pembrock* (1976), 62 Ill. 2d 317, 321; *People v. Sherman* (1974), 57 Ill. 2d 1, 4; *People v. McCabe* (1971), 49 Ill. 2d 338, 341; *People ex rel. Hopf v. Barger* (1975), 30 Ill. App. 3d 525, 534.

It is conceivable that the General Assembly concluded that the relatively smaller size of other bodies covered by the Act and their generally greater proximity to their constituents justified a difference in treatment. Due to its compliance with the well-entrenched rational-basis

standard we may not preempt a legislative judgment.

The next constitutional contention raised by the defendants is that the Open Meetings Act, as applied to these defendants, is a denial of due process of law under the fourteenth amendment to the United States Constitution and article I, section 2, of the Illinois Constitution of 1970. Those constitutional provisions read in pertinent part:

"*** nor shall any State deprive any person of life, liberty, or property, without due process of law; ***." (U.S. Const., amend. XIV, sec 1.)

"Section 2. Due Process and Equal Protection

No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws." (Ill. Const. 1970, art. I, sec. 2.)

In particular the defendants argue that the Open Meetings Act is vague, uncertain and indefinite with regard to the phrase "meetings of a legislative body."

A statute is impermissibly vague when "men of common intelligence must necessarily guess at its meaning." (*Broadrick v. Oklahoma* (1973), 413 U.S. 601, 607, 37 L. Ed. 2d 830, 837, 93 S. Ct. 2908, 2913, quoting *Connally v. General Construction Co.* (1926), 269 U.S. 385, 391, 70 L. Ed. 322, 328, 46 S. Ct. 126, 127.) A criminal statute violates due process if it fails to give adequate notice as to what action or conduct is proscribed. (*People v. Schwartz* (1976), 64 Ill. 2d 275, 280; *People v. Vandiver* (1971), 51 Ill. 2d 525.) "Impossible standards of specificity, however, are not required." *People v. Schwartz* (1976), 64 Ill. 2d 275, 280, citing *Jordan v. De George* (1951), 341 U.S. 223, 231, 95 L. Ed. 886, 892, 71 S. Ct. 703, 707-08.

We think that the Open Meetings Act, as applied to these defendants, is not impermissibly vague for two reasons. First, after the 1967 amendments deleted the word "official" where it had appeared before the word "meetings," no guessing was required to prohibit *all*

*meetings* of members of legislative bodies, where delibera-
tions were conducted or actions taken on public business.
Secondly, the clear import of section 2 of the Act is that
any subdivision of a legislative body, "including but not
limited to committees and subcommittees" supported by
tax revenues, is subject to the Act. Ill. Rev. Stat. 1977,
ch. 102, par. 42.

In *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 37
L. Ed. 2d 830, 93 S. Ct. 2908, and its companion case,
*United States Civil Service Com. v. National Association
of Letter Carriers* (1973), 413 U.S. 548, 37 L. Ed. 2d 796,
93 S. Ct. 2880, the Supreme Court upheld, respectively,
a State and a Federal statute against several constitutional
challenges. The statutes involved in those cases prohibited
certain public employees from participating in political
parties or campaigns. We think the court's statements in
*Broadrick v. Oklahoma* (1973), 413 U.S. 601, 607-08,
37 L. Ed. 2d 830, 837-38, 93 S. Ct. 2908, 2913-14, in
rejecting the due process attack in those cases are parti-
cularly appropriate in this case:

> "Whatever other problems there are with section
> 818, it is all but frivolous to suggest that the
> section fails to give adequate warning of what
> activities it proscribes or fails to set out 'explicit
> standards' for those who must apply it. *Grayned v.
> City of Rockford* [(1972), 408 U.S. 104, 108, 33
> L. Ed. 2d 222, 227, 92 S. Ct. 2294, 2299]. In the
> plainest language, it prohibits any state classified
> employee from being 'an officer or member' of a
> 'partisan political club' or a candidate for 'any paid
> public office.' It forbids solicitation of contribu-
> tions 'for any political organization, candidacy or
> other political purpose' and taking part 'in the
> management or affairs of any political party or in
> any political campaign.' Words inevitably contain
> germs of uncertainty and, as with the Hatch Act,

there may be disputes over the meaning of such terms in section 818 as 'partisan,' or 'take part in,' or 'affairs of' political parties. But what was said in [*United States Civil Service Com. v. National Association of Letter Carriers* (1973), 413 U.S. 548, 578-79, 37 L. Ed. 2d 796, 816, 93 S. Ct. 2880, 2897], is applicable here: 'there are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest.' *Moreover, even if the outermost boundaries of section 818 may be imprecise, any such uncertainty has little relevance here, where appellants' conduct falls squarely within the 'hard core' of the statute's proscriptions and appellants concede as much.* See *Dombrowski v. Pfister* [(1965), 380 U.S. 479, 491-92, 14 L. Ed. 2d 22, 31, 85 S. Ct. 1116, 1123-24]; *United States v. National Dairy Products Corp.* [(1963), 372 U.S. 29, 9 L. Ed. 2d 561, 83 S. Ct. 594]; *Williams v. United States* [(1951), 341 U.S. 97, 95 L. Ed. 774, 71 S. Ct. 576]; *Robinson v. United States* [(1945), 324 U.S. 282, 286, 89 L. Ed. 944, 947, 65 S. Ct. 666, 669]; *United States v. Wurzbach* [(1930), 280 U.S. 396, 74 L. Ed. 508, 50 S. Ct. 167]." (Emphasis added.)

The same is true in the instant case. Therefore, the Act, as applied to these defendants, is neither vague, indefinite nor uncertain, and thus comports with minimum due process requirements.

The defendants' penultimate contention is that the Open Meetings Act violates the State constitutional

provision which prohibits special or local legislation "when a general law is or can be made applicable" (Ill. Const. 1970, art. IV, sec. 13). We find no merit in this contention, since we have already held that a legitimate governmental interest in treating smaller governmental bodies differently from the General Assembly exists with regard to the public's access to governmental deliberations and actions. *Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 111-12.

Thus, the exemption of the General Assembly from coverage under the Act is not akin to an attempt to enact reforms "one step at a time" (*Grace v. Howlett* (1972), 51 Ill. 2d 478, 487, quoting *Williamson v. Lee Optical of Oklahoma, Inc.* (1955), 348 U.S. 483, 489, 99 L. Ed. 563, 573, 75 S. Ct. 461, 465) but, rather, is an instance where a general law recognizes a distinction between two classes which warrants different treatment. (*McRoberts v. Adams* (1975), 60 Ill. 2d 458, 462.) The Open Meetings Act is intended to create a practicable means of opening the deliberative processes of government to public view. The General Assembly is already affected in this area by article IV, section 5(c), of the 1970 Constitution, which requires that sessions and meetings of committees, joint committees and legislative commissions will, subject to two exceptions, be open to the public. In its substantive effect, then, the Open Meetings Act exemption refers only to private meetings between General Assembly members; however, the size of the General Assembly and the volume of public business it deals with, compared to the size and volume of substantially all of the bodies covered by the Act, reveal why it is reasonable for a distinction to be made between the General Assembly and other bodies. Recognition of the different nature of the General Assembly under the Act does not violate the special legislation provision of the 1970 Constitution.

Finally, the defendants contend that the Open Meet-

ings Act, as applied to them, violates their rights of freedom of speech and assembly under both the Federal and State constitutions. The defendants argue that the Act is overly broad and raises the specter of public officials fearing to discuss political or public business at any time outside of a formal public forum, lest they be prosecuted under the Act.

A governmental purpose to control or prevent activities constitutionally subject to State regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms. (*Zwickler v. Koota* (1967), 389 U.S. 241, 250, 19 L. Ed. 2d 444, 451, 88 S. Ct. 391, 396; *NAACP v. Alabama ex rel. Flowers* (1964), 377 U.S. 288, 307, 12 L. Ed. 2d 325, 338, 84 S. Ct. 1302, 1314; *People v. Klick* (1977), 66 Ill. 2d 269, 273; *People v. Ridens* (1974), 59 Ill. 2d 362, 370.) A statute is overly broad if it may reasonably be interpreted to prohibit conduct which is constitutionally protected. *People v. Klick* (1977), 66 Ill. 2d 269, 273, citing *Grayned v. City of Rockford* (1972), 408 U.S. 104, 114-15, 33 L. Ed. 2d 222, 231, 92 S. Ct. 2294, 2302.

It is a well recognized constitutional principle that the government may adopt reasonable time, place and manner regulations which do not discriminate among speakers or ideas, in order to further an important governmental interest unrelated to the restriction of communication. (*Buckley v. Valeo* (1976), 424 U.S. 1, 18, 46 L. Ed. 2d 659, 687, 96 S. Ct. 612, 634, and cases cited therein.) We conclude that the General Assembly has adopted reasonable regulations with regard to public officials' rights of speech and assembly when those rights are balanced against the extremely important governmental interest of the public's right of access to public information. The Open Meetings Act does not prohibit political discussions between or among members of public bodies; thus there is no chilling effect upon political discussion.

Moreover, we agree with the Attorney General's opinion that "whether a gathering falls within the definition of meeting as used in the Act, would depend upon the peculiar facts in each situation. It is unlikely that the causal non-prearranged conversation among less than, or even all, of the members of a particular body in a coffee shop, during which the business of the body was discussed, would constitute a meeting within the terms of the Act. I assume such a gathering is primarily a social gathering and business is discussed only incidentally between certain individuals and not among the group as a whole. Of course, if any decisions or agreements to make decisions are made, such a gathering would be a meeting within the terms of the Act." (1974 Att'y Gen. Op. 123, 126.) The Act is only addressed to meetings designed to discuss or reach an accord with regard to public business which properly should be deliberated or acted upon in an open forum. In short, the Act requires that public business must be conducted publicly. We perceive this limitation to be reasonable when viewed in relation to a public official's obligation to carry out the public trust honorably and in good faith. Moreover, we think the Act clearly does not prohibit consultation between an official and his staff so that the official may offer views for discussion and debate in a private setting. (See *People ex rel. Cooper v. Carlson* (1975), 28 Ill. App. 3d 569 (staff members not subject to Act). Thus the Open Meetings Act is a reasonable attempt to balance the right of the press and the people to view the deliberative and decision-making processes of government first-hand with the right of public officials to speak their minds freely and associate with whomever they choose. The Act places a limited and reasonable regulation upon officials by requiring them to speak of public business with their fellow officials only when they are in a public forum, and sufficient notice under the Act has been given. (Ill. Rev. Stat. 1977, ch. 102, par. 42.02.) We agree

with the appellate court that public officials' desire to consult privately must give way to the open conduct of the public's business "or else the people risk having their business done in secret, with the possibility that private deals will supplant the public interest." (78 Ill. App. 3d 842, 845.) We are unable to say therefore that the balance struck by the General Assembly is unreasonable.

In the instant case, nine public officials, a majority of a 15-member city council, had a prearranged meeting to discuss matters set to be discussed in a public meeting later that same night. Their conduct fell within the "hard core" of the Act's proscriptions. Whether the Act applies to other meetings and whether it is constitutional in other settings or as applied to other public officials must await further determination. We conclude only that the Act applies to the meetings held by these defendants and that the Open Meetings Act (Ill. Rev. Stat. 1977, ch. 102, par. 41 *et seq.*) is constitutional as applied to these defendants.

Accordingly, for the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE WARD, dissenting:

The majority leaves a cloud of constitutional doubt hanging over this important statute.

The statute expressly states that it shall apply to meetings of executive as well as legislative bodies and raises serious questions as to whether it violates the constitutional assurances of separation of governmental powers. Is the Act to apply to meetings of the governor's cabinet, for example, or to meetings of officials of the Attorney General's office or State's Attorneys offices? The statute was amended in 1979 to make it inapplicable to "that portion of meetings of law enforcement agencies, committees or commissions involved in the investigation of criminal activities which are concerned with or are to

discuss informant sources, the hiring or assignment of undercover personnel, the purchase and assignment of undercover autos, or actual ongoing, prior or future investigations, or any budgetary considerations specifically concerning any of the foregoing." Ill. Rev. Stat. 1979, ch. 102, par. 42(h).

But what about meetings of officials of the Attorney General's office or the State's Attorneys offices with discussions not regarding criminal investigations, but prosecutions? Topics discussed might be flaws or merits in the particular case, trial strategy, summoning of witnesses and their suspected unreliability, caliber of defense counsel or trial judges and the like. It is to be noted that the Act states that its intent is that "deliberations be conducted openly." Ill. Rev. Stat. 1977, ch. 102, par. 41.

The Act fairly bristles with questions regarding the separation of powers and other constitutional areas. The opinion of the majority implicitly acknowledges constitutional problems, stating that the decision here is only "under the narrow facts presented" (83 Ill. 2d at 202) and that "[w]hether the Act applies to other meetings and whether it is constitutional in other settings or as applied to other public officials must await further determination" (83 Ill. 2d at 211). But the deep and troubling problems will not go away. I believe it is a disservice not to address the problems and permit the legislature, if the Act is in fact determined to be unconstitutional, to take fresh legislative action.

As a general proposition it is said that a court, of course, will avoid constitutional questions if possible and will decide only the question before it. But this court on its own initiative will consider constitutional problems and will if necessary declare legislation unconstitutional. *People ex rel. Peoria Civic Center Authority v. Vonachen* (1975), 62 Ill. 2d 179.

There is a severability provision in the act here (Ill.

Rev. Stat. 1977, ch. 102, par. 45) but if the legislature intended the provisions of the Act as a whole piece of legislation, as unquestionably was the case here, the entire act would fall. *People ex rel. Peoria Civic Center Authority v. Vonachen* (1975), 62 Ill. 2d 179.

MR. JUSTICE UNDERWOOD joins in this dissent.