(No. 57637.—■■■■)

*In re* CONTEST OF THE ELECTION FOR THE OFFICES OF GOVERNOR AND LIEUTENANT GOVERNOR HELD AT THE GENERAL ELECTION ON NOVEMBER 2, 1982.

*Opinion filed January 7, 1983.*

466

WARD, GOLDENHERSH, and CLARK, JJ., dissenting.

John R. Schmidt, Frank Cicero, and David A. Epstein, of Chicago, for petitioners Adlai E. Stevenson III and Grace Mary Stern.

Anton R. Valukas and Eugene R. Wedoff, of Jenner &

Block; James S. Montana, Jr., of Pierce, Lydon, Griffing & Montana; and Jeremiah Marsh, of Hopkins & Sutter, all of Chicago, and Saul J. Morse, of Gramlich & Morse, of Springfield, for respondents James R. Thompson and George H. Ryan.

CHIEF JUSTICE RYAN delivered the opinion of the court:

On November 2, 1982, the voters of this State cast their ballots to elect, among other officials, a governor and a lieutenant governor. On November 22, 1982, the State Board of Elections certified the results of the election, which certification showed as to the Republican and Democratic candidates for these offices the following results:

James R. Thompson and George H. Ryan
(Republican)                                          1,816,101
Adlai E. Stevenson and Grace Mary Stern
(Democrat)                                            1,811,027

Thus, the certification revealed that the Republican candidates for governor and lieutenant governor, Thompson and Ryan, had been elected by a plurality of 5,074 votes.

Thereafter on December 7, 1982, within 15 days following certification of the election results, Stevenson and Stern filed with the clerk of this court an action entitled "Petition Of State Election Contest." As required by statute (Ill. Rev. Stat. 1981, ch. 46, par. 23—1.1) the clerk of this court notified the chief justice, who immediately convened the court, and notices of the filing of the petition were mailed by the clerk of the court to all parties required by statute. On December 10, 1982, Thompson and Ryan filed a motion to strike the petition, supported by a memorandum of law, and on December 13, 1982, petitioners Stevenson and Stern filed objections to the motion to strike. This court set the motion to strike and the objections thereto for oral argument and directed the parties to file memoranda in support of their respective positions.

Following oral argument on December 21, 1982, the matter was taken under advisement.

The constitution of this State provides that election contests for statewide executive offices "shall be decided by the courts in a manner provided by law." (Ill. Const. 1970, art. V, sec. 5.) In 1977 the General Assembly enacted Public Act 80—883 (Ill. Rev. Stat. 1981, ch. 46, par. 23—1.1 *et seq.*). The statute provides that anyone qualified under the statute to contest an election shall, within 15 days of the date of the official proclamation of the results of such an election, file a "Petition Of State Election Contest" with the clerk of this court, together with the filing fee of $10,000. The statute, after providing for the contents of the petition (Ill. Rev. Stat. 1981, ch. 46, par. 23—1.2), which we will discuss later, and notice to the parties (Ill. Rev. Stat. 1981, ch. 46, par. 23—1.3), provides that upon receipt of notification of the filing, the chief justice shall call the court into session and the court, by a majority vote, shall designate three judges of the circuit court to serve as a special panel, which shall be designated as the "State Election Contest Panel." (Ill. Rev. Stat. 1981, ch. 46, par. 23—1.4.) Following the organization of the panel, the statute provides that each candidate in the election contest may become a party to the contest proceeding by entering his appearance or otherwise filing written pleadings in response to the petition. (Ill. Rev. Stat. 1981, ch. 46, par. 23—1.9.) The statute then provides that the three-judge panel shall proceed to hear relevant evidence and shall adjudicate and decide the issues presented in the election-contest petition "on or before the 180th day after the election." (Ill. Rev. Stat. 1981, ch. 46, par. 23—1.10.) All final decisions made by the panel are final judgments of a circuit court. Ill. Rev. Stat. 1981, ch. 46, par. 23—1.10.

We must first consider an issue which was not raised by either Stevenson and Stern or Thompson and Ryan—

the constitutionality of the statute involved. Although this issue was not raised, in view of the nature of the proceedings and the public interest involved, failure to raise the constitutional question does not constitute a waiver. (*Welton v. Hamilton* (1931), 344 Ill. 82; *Chicago & Eastern Illinois Ry. Co. v. Miller* (1923), 309 Ill. 257.) The question also is one of jurisdiction. Although this court usually will not decide a constitutional issue if the case can be decided on other grounds (*People v. Fleming* (1971), 50 Ill. 2d 141; *Exchange National Bank v. Lawndale National Bank* (1968), 41 Ill. 2d 316) we must do so in this case because the issue affects the legitimacy of the proceedings we are asked to institute.

In fact, it would border on the irresponsible if, believing as we do that the statute is unconstitutional, we permit this election contest to commence. It is hornbook law that an unconstitutional statute is void. (*Van Driel Drug Store, Inc. v. Mahin* (1970), 47 Ill. 2d 378, 381; *People ex rel. Barrett v. Sbarbaro* (1944), 386 Ill. 581, 590; *People v. Schraeberg* (1932), 347 Ill. 392, 394; *City of Ottawa v. Hulse* (1928), 332 Ill. 286, 293.) Nor is our *sua sponte* consideration of the constitutional issue unprecedented, for in *People ex rel. Peoria Civic Center Authority v. Vonachen* (1975), 62 Ill. 2d 179, 181, this court on its own initiative considered a constitutional question not raised by the parties and held the governing statute unconstitutional.

In considering the constitutional question we again refer to the provisions of article V, section 5, of the Illinois Constitution of 1970, which provides that election contests "shall be decided by the courts in a manner provided by law." Thus, under this provision it is the courts that must decide election contests, and the General Assembly may provide by law for the manner of conducting election contests. This conclusion is supported by the explanation of this provision of the Constitution by the Committee on the Executive at the constitutional convention. The expla-

nation states:

> "The legislature will have ample power to define the procedures for determining the actual election results and to specify how contests shall be handled in the courts. The only limitation on the legislature in enacting laws on that subject will be constitutional provisions, *such as those in the Judicial Article dealing with the courts and their basic character.*" (Emphasis added.) 6 Record of Proceedings, Sixth Illinois Constitutional Convention 367-68.

Thus, this section of the Constitution does not confer upon the General Assembly the power to create a court or to alter the basic character of a court. The power conferred upon the General Assembly is, as noted above, to provide for the procedure to be followed and the manner of conducting an election contest. Article VI, section 1, of the Illinois Constitution of 1970 provides that the judicial power of the State is vested in a supreme court, an appellate court and circuit courts. Thus, the courts in which article V, section 5, of the Constitution vests the power to decide election contests are the courts created by article VI of our constitution.

In *People ex rel. Rice v. Cunningham* (1975), 61 Ill. 2d 353, this court considered the constitutionality of a death penalty statute which provided that the determination of whether or not the death penalty should be imposed would be made by a three-judge panel. We need not here discuss the rationale of the *Cunningham* case at length. We note only that it held that the General Assembly did not have the authority to provide that a case be heard by a three-judge panel. The court stated that this is not merely a procedural requirement but rather involves the scope of a circuit judge's jurisdiction. (*People ex rel. Rice v. Cunningham* (1975), 61 Ill. 2d 353, 361.) The court also held that the 1970 Constitution confers no authority on the legislature to create new courts.

The legislature in the statute now under consideration clearly intended that the three-judge State Election Contest Panel operate collectively as a court. The statute itself pro-

vides that the panel shall hear evidence and adjudicate and decide the issues presented and that all final decisions of the panel are final judgments of a circuit court. (Ill. Rev. Stat. 1981, ch. 46, par. 23—1.10.) This is an attempt by the legislature to alter the basic character of the circuit courts, which the Committee on the Executive stated, in its explanation of this article, that the General Assembly was constitutionally prohibited from doing. Also, the attempt by the legislature to confer authority upon a panel of three circuit judges to act as a court is invalid under the holding of this court in *Cunningham*. Because of this clear holding that the legislature has no power to act in this manner, we must consider the constitutional question involved in this case although, as stated below, there is another ground upon which the motion now before us can be decided.

Often, if a statute is found to be invalid, the prior statute which it had repealed becomes operative. (*Fiorito v. Jones* (1968), 39 Ill. 2d 531; *People v. Fox* (1920), 294 Ill. 263.) However, by our holding the statute under consideration in this case invalid, the prior statute governing election contests for offices of State government is not revived. That statute provided that the legislature, in a joint meeting, should decide election contests. (Ill. Rev. Stat. 1969, ch. 46, par. 23—1.) The 1970 Constitution, however, provides that such election contests shall be heard by the courts. (Ill. Const. 1970, art. V, sec. 5.) It would therefore be constitutionally impermissible to apply the previous law.

In addition, the allegations of the petition do not conform to the statute and the prior decisions of this court and are not sufficient in any event to confer jurisdiction upon the courts to proceed with this election contest.

The petitioners contend that under the statute this court does not have the authority to entertain the Thompson-Ryan motion to strike the petition. It is petitioners' contention that this court only has the authority to appoint the three-judge State Election Contest Panel and that the Thompson-

Ryan motion to strike should be presented to this panel, which would then determine the sufficiency of the petition. We do not agree.

Election contests were unknown at common law and are strictly creatures of statute. A court has no jurisdiction in such cases unless provided by statute. (*Young v. Mikva* (1977), 66 Ill. 2d 579, 582.) In *Brown v. VanKeuren* (1930), 340 Ill. 118, this court was asked to decide an action under the "Pauper's act," which the court stated was purely a statutory action. The court held:

> "The petition required to put the court in motion and give it jurisdiction must be in conformity with the statute granting the right and must show all the facts necessary to authorize it to act,—*i.e.*, it must contain all the statements which the statute says the petition shall state,—and if the petition fails to contain all of these essential elements the court is without jurisdiction." *Brown v. VanKeuren* (1930), 340 Ill. 118, 122.

Thus, before this court has any authority to act under the statute, a petition sufficient to trigger the application of the statute must be filed. The statute does not specifically confer upon this court the authority to entertain a motion to strike. However, the court has stated "it is the province of the court to determine for itself whether the particular case is one within its jurisdiction." (*Fico v. Industrial Com.* (1933), 353 Ill. 74, 79; see also *People ex rel. Adamowski v. Dougherty* (1960), 19 Ill. 2d 393, 399.) Since the petition has been filed in this court, we must consider if what has been filed is sufficient to confer jurisdiction under the statute. This court has the inherent power to make this determination even in the absence of a specific grant of statutory authority. The motion to strike filed by Thompson and Ryan is an appropriate method of bringing this issue before the court.

There is a further and very practical reason for entertaining the motion to strike. An election contest of the magnitude of the one sought by the petitioners is necessarily an

extremely burdensome, time-consuming and costly undertaking. It could well consume the entire 180 days after election allowed by the statute for its completion. It is a much more efficient use of all the resources that will be involved in such proceedings if the sufficiency of the petition is determined now, before the expenditure of those resources, instead of after an appeal of a decision of a three-judge State Election Contest Panel.

We now address the sufficiency of the allegations in the petition which has been filed in this case. Relevant to the decision of this case are sections 23—1.2(d), (e), (g) and (h) of the statute (Ill. Rev. Stat. 1981, ch. 46, pars. 23—1.2(d), (e), (g), (h)), which provide that the petition shall contain:

> "(d) A statement that each petitioner believes (i) mistake or fraud has been committed in the casting, counting or return or canvass of the votes for the office involved or (ii) there was some other irregularity in the conduct of the contested election, or both;
>
> (e) A statement declaring with particularity the specific precincts in which the mistake, fraud or irregularity relied upon by Petitioner was believed to have occurred, or such other grounds relied upon by Petitioner;
> ***
> (g) A statement declaring that, as a consequence of the mistake, fraud or irregularity alleged, the result of the election, as officially proclaimed was incorrect;
>
> (h) A statement declaring the Petitioner's belief as to which candidate did receive the highest number of votes;
> *** "

Paragraph 4 of the petition follows the language of section 23—1.2(d) and states that each petitioner believes that mistake or fraud has been committed in the casting, counting, return and canvass of the votes and that there were irregularities in the conduct of the election. This paragraph of the petition then lists 12 different categories of mistake, fraud or irregularity. Paragraph 5 of the petition alleges that the specific precincts in which mistake, fraud or irregularities are believed to have occurred are set forth in exhibit A

and that, in addition to the mistake, fraud or irregularities set forth in exhibit A, petitioners believe that similar instances of mistake, fraud or irregularities occurred in other precincts.

Paragraph 7 of the petition alleges that, as a consequence of the mistake, fraud or irregularities alleged, the officially proclaimed result of the election for governor and lieutenant governor was incorrect. Paragraph 8 alleges that the petitioners believe that Adlai E. Stevenson and Grace Mary Stern received the highest number of votes for the offices of governor and lieutenant governor.

Stevenson and Stern contend that the petition conforms to the requirements of section 23—1.2 of the Election Code (Ill. Rev. Stat. 1981, ch. 46, par. 23—1.2) and that it is therefore sufficient. It is their position that the provisions of this statute control, and not the case law developed through election-contest decisions involving different statutes in cases which we will discuss later. We do not agree that the bare allegations, either parroting or paraphrasing the statute, state sufficient facts to trigger the proceedings under the election-contest statute. (See *Vanderbilt v. Marcin* (1970), 127 Ill. App. 2d 192.) Such allegations constitute only conclusions of the pleader. Thus, the allegations of paragraph 4, which only allege in the language of the statute that petitioners believe mistake or fraud has been committed in the casting, counting, return and canvassing of the votes, and that there were other irregularities, are conclusions of the pleader unsupported by allegations of specific facts. We will discuss the sufficiency of other allegations of the petition later.

Thompson and Ryan, in support of their position that the allegations of the petition are insufficient, rely on this court's decision in *Zahray v. Emricson* (1962), 25 Ill. 2d 121. In that case, an election contest petition had been filed in the circuit court of McHenry County under the provisions of sections 23—19 and 23—20 of the Election Code (Ill. Rev. Stat.

1959, ch. 46, pars. 23—19, 23—20) contesting an election for certain city offices. As stated in the opinion, the amended petition "alleged upon the basis of information and belief that fraud and mistake had occurred in the election in the following respects: That unqualified voters had been permitted to vote in each of the city's four election districts; that ballots included in the official count were not endorsed as required by law; that ballots included in the official count were not marked according to law; that ballots marked according to law were not included in the official count; that the election judges in the four districts did not canvass and tally the votes polled according to law; and that the vote tallies for each candidate, when added together, did not equal the number of votes represented as tallied." (25 Ill. 2d 121, 123.) The petition in *Zahray* "prayed that a recount be made of the votes cast for each councilman in each district, and that the persons who should appear as elected should be declared as elected." (25 Ill. 2d 121, 123.) The trial court denied a motion to dismiss the amended petition. An answer was then filed denying the irregularities. At the close of plaintiffs' proof, the trial court dismissed the petition on the ground that the plaintiffs had not made out a *prima facie* case. On review, this court stated:

"While we are in accord with the result reached by the trial court, it is our opinion that the cause should have been dismissed for the insufficiency of the plaintiffs' petition." (*Zahray v. Emricson* (1962), 25 Ill. 2d 121, 123.)

Although *Zahray* came to this court following a partial hearing of evidence and a dismissal for failure of the plaintiffs to establish a *prima facie* case, it nonetheless is a clear holding on the question of the sufficiency of the allegations of the petition. In *Easdale v. Sparta Community School District* (1963), 29 Ill. 2d 554, this court stated that the court in *Zahray* "in approving the result, [dismissal at the close of the plaintiffs' proof] *held* that the cause should have been dismissed for insufficiency of the complaint." (Emphasis added.) (*Easdale v. Sparta Community School District*

(1963), 29 Ill. 2d 554, 557.) Thus the decision in *Zahray* was and has been held by this court to be a holding on the sufficiency of the complaint and not a holding on the sufficiency of proof to establish a *prima facie* case.

In discussing the sufficiency of the allegations in an election contest case, this court stated in *Zahray*:

> "Equally certain is the principle that the proceeding cannot be employed to allow a party, on mere suspicion, to have the ballots opened and subjected to scrutiny to find evidence upon which to make a tangible charge. [Citations.] And while the pleadings in contest proceedings are not required to comply with the strict technical rules applicable in civil actions, there should be such strictness as will prevent the setting aside of the acts of sworn officials without adequate and well defined cause. [Citations.] *Stated otherwise, there should be no reason for a recount of the votes unless there is a positive and clear assertion, allegation or claim that such a recount will change the result of the election.*" (Emphasis added.) *Zahray v. Emricson* (1962), 25 Ill. 2d 121, 124.

Stevenson and Stern contend that *Zahray* does not require that the allegations of fact in the petition be such that if proved the court would be required to declare the petitioners the winners. They contend that *Zahray* requires only that the petition contain *either* an allegation that the results of the election would be changed by the alleged irregularity, *or* that there must be allegations of fact which show such results. Stevenson and Stern contend that their petition, in paragraph 7, alleges that as a consequence of the mistake, fraud or irregularities alleged the official result was in error. They further contend that since in paragraph 8 of the petition they state that they *believe* they received the highest number of votes, the petition complies with the alternative expressed in *Zahray*. Stevenson and Stern point to language from another part of the *Zahray* opinion and have placed a construction on it that is inconsistent with the plain language on this question which is stated in the italicized part of that opinion quoted above. That holding is that there

must be "a positive and clear assertion, allegation or claim that such a recount will change the result of the election." (*Zahray v. Emricson* (1962), 25 Ill. 2d 121, 124.) The allegations of paragraphs 7 and 8 of the petition that the official results were incorrect and that the petitioners *believe* that they received the highest number of votes do not come close to being "positive and clear assertion[s]" that a recount will change the result of the election. They amount to little more than an expression of hope.

Section 23—1.2(h) requires that the petition contain "[a] statement declaring the Petitioner's belief as to which candidate did receive the highest number of votes." The language of the statute does not obviate the necessity for positive and clear allegations of fact in the petition supporting such conclusions but rather supports and is consistent with the requirement that the facts upon which the belief is based be set forth with particularity.

In *McCaslin v. Moore* (1966), 67 Ill. App. 2d 355, the court reviewed a case under section 23—20 of the Election Code (Ill. Rev. Stat. 1963, ch. 46, par. 23—20). The court, relying on *Zahray*, held that, in addition to the requirement of the statute, the petition must contain the allegations held essential in *Zahray*, stating:

> "This rule will eliminate the proliferation of unjustified and inconsequential election contests which would otherwise waste the court's time and do damage to our democratic creed." (*McCaslin v. Moore* (1966), 67 Ill. App. 2d 355, 358.)

The pleading requirements of *Zahray* were restated in *Louden v. Thompson* (1971), 1 Ill. App. 3d 809, 811-12. The court in that case stated:

> "Under the circumstances the only conclusion which can be drawn is that the petitioner 'hoped' to discover errors or mistakes in a recount which might be favorable to her. Such a reason is not an appropriate basis for a recount." 1 Ill. App. 3d 809, 812.

In *Smith v. Stewart* (1973), 14 Ill. App. 3d 1039, the

court considered an appeal from the dismissal of a complaint contesting an election for aldermen in the city of Chicago. The court followed the holding in *Zahray*. In *Savage v. Frost* (1973), 14 Ill. App. 3d 1036, the same court, in another contest of the election of an alderman in the city of Chicago, followed *Zahray* and affirmed the dismissal of the election contest petition.

In *Cooper v. Marcin* (1976), 44 Ill. App. 3d 918, the trial court had dismissed a complaint filed pursuant to article IX, section 17, of the Liquor Control Act (Ill. Rev. Stat. 1973, ch. 43, par. 182), contesting local-options elections. The court, following *Zahray*, held the complaints were properly dismissed. See also *Cummings v. Marcin* (1973), 16 Ill. App. 3d 18; *Duncan v. Marcin* (1980), 82 Ill. App. 3d 963.

In another opinion filed recently the pleading requirement of *Zahray* was again acknowledged. In *Whitler v. Macoupin County* (1982), 107 Ill. App. 3d 668, 671, the court stated:

> "The rule of *Zahray* that the contestant must allege and prove the likelihood that the results of an election will be changed in order to obtain a recount has been established in this State and is also followed elsewhere. [Citations.]"

It is thus clear that the pleading requirements of *Zahray* are firmly established in the law of this State. The reason for these requirements was noted in *Zahray*. It was there stated that there must be such strictness in the pleading as will prevent the setting aside of the acts of sworn officials without adequate and well-defined cause. (*Zahray v. Emricson* (1962), 25 Ill. 2d 121, 124.) Judges of election are presumed to perform the duties required of them by statute. (*Tuthill v. Rendelman* (1944), 387 Ill. 321, 332; *Boland v. City of La Salle* (1938), 370 Ill. 387, 391.) It is also well established that an election-contest proceeding cannot be employed simply to allow, on mere suspicion, the ballots to be subjected to scrutiny for the purpose of finding evidence upon which to base a charge. (*Zahray v. Emricson* (1962),

25 Ill. 2d 121, 124.) This principle has governed election-contest pleadings in this State since long before the court's decision in *Zahray*. (See *Kreitz v. Behrensmeyer* (1888), 125 Ill. 141, 172-73; *Shouse v. Dieterich Community Unit School District* (1954), 3 Ill. App. 2d 474, 476.

Stevenson and Stern contend that the specific requirements stated in the above cases do not apply to statewide election contests. First, we must observe that a statewide contest differs from one on a smaller geographic scale only in that many more precincts are involved. Whether one precinct is involved, or every precinct in the State, each precinct is manned by judges who have sworn to perform their statutory duties. The same rationale stated in *Zahray* should apply to statewide elections for the same reasons. There should be such strictness in pleadings as will prevent the setting aside of the acts of these sworn officials without adequate and well-defined cause and the proceedings should not be permitted to be instituted merely on suspicion.

In fact it would appear that there are compelling reasons to apply the pleading requirements of *Zahray* to statewide election contests. Because of the magnitude of the undertaking, conducting such a contest would be extremely time consuming. The statute provides that the issues must be decided in such a case and the decisions rendered within 180 days after the election. (Ill. Rev. Stat. 1981, ch. 46, par. 23—1.10.) During that period of time, election personnel and election machinery and records will be involved in and tied up by the election contest and cannot be used in preparing for and conducting other elections to be held in the spring of 1983. In addition to being time consuming and disruptive, such an election contest will, no doubt, be terribly expensive. In view of the statutory $75,000 limitation on the costs to a party (Ill. Rev. Stat. 1981, ch. 46, par. 23—1.14), substantially all of the cost of such a contest will be borne by the taxpayer. Until such an election contest is resolved, the political turmoil surrounding it and the fact that it will be un-

known in this case whether the incumbent governor will continue to hold that office could effectively prevent the legislative and executive branches of government from dealing with the urgent problems facing this State. The State of Illinois should not be forced to endure these consequences on the mere suspicion of defeated candidates or on their belief or hope that an election contest would change the results.

We also do not agree with the petitioners that the specific language of the statute permits less specific pleading. Section 23—1.2(e), which is quoted above, requires that the complaint contain "[a] statement declaring with *particularity* the *specific* precincts in which the mistake, fraud or irregularity *relied upon* by Petitioner was believed to have occurred, or such other grounds relied upon by Petitioner." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 46, par. 23—1.2(e).) Section 23—1.2(g) requires that the petition contain a statement declaring "that, as a consequence of the mistake, fraud or irregularity *alleged*, the result of the election, as officially proclaimed, was incorrect." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 46, par. 23—1.2(g).) The requirements of these two subparagraphs of section 23—1.2 preclude reliance upon general allegations of fraud, mistake and irregularities. These provisions require that the petition name the *specific* precincts where the fraud, mistake or irregularity relied upon occurred and that the allegations be made with particularity setting forth the specific irregularity relied upon.

The cases cited above have applied the specific-pleading-of-fact requirement to a variety of election-contest statutes. The requirement has not been based upon the language of the particular statute involved. Instead, the requirement is based upon the unwillingness of the courts to assume jurisdiction over a mere exploratory process seeking to overturn the results determined by sworn public officials, who are presumed to have performed their statutory duties.

The statute we are now considering was enacted by the

General Assembly in 1977. *Zahray* and all of the other cases cited above applying this strict pleading requirement, except *Whitler*, were decided prior to the enactment of this statute. It must be presumed that the legislature acted with knowledge of the requirements of these decisions when this statute was enacted. (*Illinois Power Co. v. City of Jacksonville* (1960), 18 Ill. 2d 618; *Heineman v. Hermann* (1944), 385 Ill. 191, 196.) In *People v. Bernette* (1964), 30 Ill. 2d 359, 374, this court stated:

> "It is axiomatic that, generally, a statute should not be construed to effect a change in the settled law of the State unless its terms clearly require such a construction."

We find nothing in the language of the statute on statewide election contests which clearly requires, or even indicates, that the strict pleading requirements of *Zahray* should not be applied to the allegations of the petition in our case.

It is clear from the statute that the petition must allege the specific precincts in which the alleged fraud, mistake or irregularity relied upon to change the result of the election occurred. Paragraph 5 of the petition alleges that the specific precincts are set forth in exhibit A. Paragraph 5 also alleges that in addition to the precincts alleged in exhibit A, petitioners believe similar instances of mistake, fraud or irregularity occurred in other precincts "of such respective election jurisdictions and in each of the other election jurisdictions in which the general election of November 2nd, 1982 was held." This general allegation in effect challenges the result in every precinct in the State. It neither constitutes an allegation of specific precincts nor complies with the particularity requirement of section 23—1.2(e). We must therefore limit our consideration to the allegations as to the specific precincts set out in exhibit A.

There is also attached to the petition an exhibit B, which is an affidavit of the attorney for petitioners explaining how exhibit A was prepared. The petitioners had conducted discovery proceedings in designated precincts in 70 counties.

(Ill. Rev. Stat. 1981, ch. 46, par. 22—9.1.) As a result of the discovery procedure, tabulations were made in these precincts setting forth certain perceived irregularities. A tabulation for each county shows the results for each precinct where the discovery was conducted. In addition to the discovery procedure, exhibit B states that other information was gathered by observers. This information is listed on a separate sheet for some, but not all, of the jurisdictions wherein discovery was conducted. The information on these sheets relates primarily to the number of allegedly ineligible voters who voted in these precincts.

The procedure under section 22—9.1 is a discovery proceeding only. Its results do not change the declared results of an election, are not binding in an election contest, and are not a prerequisite to bringing an election contest. (Ill. Rev. Stat. 1981, ch. 46, par. 22—9.1.) Such a proceeding is but one source of information available to the contestant and, as noted in exhibit B, other sources were also used by petitioners. In our case the discovery source of information provided Stevenson and Stern with facts and figures which they incorporated in exhibit A as to each precinct and which they rely upon to support the allegations of their petition. Exhibit A also contains a summary of these alleged irregularities which the discovery proceedings disclosed. Petitioners contend that the following change in the Stevenson-Stern vote is reflected by this compilation:

| | |
|---|---:|
| Change of vote on machine recount | -14 |
| Improper duplicate ballots | 25 |
| Uninitialed ballots | 2,640 |
| Identifying marks on ballots | 2,013 |

It is contended that these errors would increase the Stevenson-Stern total by 4,664 votes. In addition, Stevenson and Stern also object to numerous ballots which contain only a part of a judge's initials. They also question a number of ballots which they claim were cast by ineligible voters.

In considering the sufficiency of the allegations concern-

ing ballots which contain identifying marks, we must examine not only the allegations of the petition, but also the contents of exhibit A. That exhibit contains a sheet for each precinct wherein discovery was conducted. On each sheet is a column headed "Ballots with distinguishing marks." The petition alleges that in these precincts ballots were counted which should not have been because "they contained marks identifying and distinguishing them from other ballots." No further allegations are made as to the nature of the marks, who made the marks or in what manner they identified or distinguished the ballots.

It is not every mark found on a ballot that will cause it to be rejected, even when obviously made by the voter. The rule is that any deliberate marking on a ballot by a voter not made to indicate his choice for a candidate and which is also effective as a mark by which a ballot may be distinguished invalidates the ballot. (*Watkins v. Road District No. 10* (1952), 413 Ill. 331; *Hankins v. Droit* (1952), 411 Ill. 250; *Tuthill v. Rendelman* (1944), 387 Ill. 321; *Barlick v. Kunz* (1940), 375 Ill. 318.) However, this court has also held that it is improper to disfranchise a voter where a stray mark on his ballot capable of distinguishing it was placed there by another person not authorized to do so by the voter. *Barlick v. Kunz* (1940), 375 Ill. 318, 325-26; *Boland v. City of LaSalle* (1938), 370 Ill. 387, 391.

In *Watkins v. Road District No. 10* (1952), 413 Ill. 331, 333, in considering whether a mark invalidated a ballot, this court said:

"The distinguishing mark which invalidates is only such as is designed to set apart and distinguish the particular ballot from other ballots cast at an election."

Nor does every mark which may be sufficient to set apart or distinguish one ballot from another necessarily invalidate the ballot. See *Boland v. City of LaSalle* (1938), 370 Ill. 387, 391.

Exhibit B, as previously indicated, is an affidavit of peti-

tioners' attorney. In that exhibit an explanation is given of the instructions to volunteer workers at the discovery proceeding relating to ballots with distinguishing marks. They were instructed to report "any ballots which appeared to have been improperly counted because they contained marks distinguishing them from other ballots; the instructions described a distinguishing mark as any mark on a ballot which serves to identify it from other ballots." These instructions did not limit the reporting of ballots as objectionable to those with distinguishing marks which this court has held will invalidate a ballot. The instructions did not state the proper standard and are broad enough to permit the listing of ballots which contain marks which this court has held do not render them invalid. This is apparent from an examination of exhibit A. For instance, in precinct No. 53 in Elk Grove Township in Cook County, 242 ballots are listed as having distinguishing marks. A note included in exhibit A explains that these ballots all had the number 436 handwritten below the box for judge's initials on the back of the ballot. Clearly these 242 ballots, all being marked with the same three digits, did not contain invalidating distinguishing marks.

It is true that whether a ballot contains disqualifying distinguishing marks is usually a question of fact, and it is so stated in the cases cited above. However, under *Zahray* the allegations that ballots contain disqualifying distinguishing marks must be specific enough to direct the court's attention to areas of legitimate challenge to the ballots questioned. Because exhibits A and B disclose that the erroneous instructions to the volunteer workers may well have resulted in many ballots being wrongly classified as having invalidating distinguishing marks, none of those ballots can now be considered in determining the sufficiency of the petition.

We note another deficiency in the petitioners' reporting of ballots with distinguishing marks. The instructions given to the volunteer workers were so general that ballots which may also have been listed in another disqualifying category,

such as ballots not initialed by a judge, could also have been included in the list of ballots having distinguishing marks. As an example, in Lake County, Grant Township precinct No. 138, exhibit A lists 134 ballots as having no judge's initials and 178 as having distinguishing marks. It cannot be ascertained how many of the ballots with distinguishing marks were also included in the category of ballots without a judge's initials.

Petitioners contend that 2,013 more of these ballots were voted for Thompson and Ryan than for Stevenson and Stern. As indicated in their tabulation set out above, they contend that they have thereby gained 2,013 votes by virtue of this defect. We do not agree. The allegations of the petition and the contents of exhibits A and B are not sufficiently specific to show that petitioners are entitled to any increase in their vote because of ballots with distinguishing marks.

For Lake and Du Page counties the tabulation sheet in exhibit A also contained an additional column headed "Ballots with unrecognizable partial initials." The total number of ballots containing this alleged defect exceeds 26,000, and 14,000 more of these ballots were cast for Thompson and Ryan than for the petitioners. We hold that the ballots challenged in this manner cannot be considered in this election contest.

The Thompson-Ryan brief explains, and it has not been disputed by the petitioners, how such a large number of ballots cast in Lake and Du Page counties came to have only part of the judge's initials. These two counties use a long ballot that may be folded over in the center along a perforated line. After it is voted, it is so folded and put in the ballot box. Before it is prepared for counting, however, the top half of the ballot is torn off along the perforated line, leaving only the bottom part of the ballot, which is the data-processing card containing the vote of the voter. Printed on the back of the long ballot is a box in which the judge is to write his initials. It is so located that the perforated line

passes through the middle of the box so that when the two parts are separated, if the initials of the judge were written in the center of the box, part of the initials would be above the perforated line and would thus be detached from that part of the ballot below the perforated line. Thus, the part of the ballot which is the data-processing card to be tabulated will of necessity contain only a partial initial.

The form of the ballot used in Lake and Du Page counties was considered in hearings by the State Board of Elections. Petitioners do not contend that they objected to the use of this form of ballot prior to the election. If this form of ballot was objectionable because the box for the judge's initials was located on a perforated line where the ballot would be separated, the objection should have been raised prior to the election rather than later, after the results were proclaimed. (See *People ex rel. Goldberg v. Delaney* (1968), 39 Ill. 2d 474.) The objection to the form of ballot not having been raised earlier, it is waived. We will not disfranchise more than 26,000 voters simply because the form of the ballot used at the election, to which the petitioners have not objected, preserved only a part of the judge's initials on the data-processing card which contained the vote of the voter. The law does not favor disfranchisement of a voter. *Boland v. City of LaSalle* (1938), 370 Ill. 387.

Exhibit B, which is the affidavit of petitioners' counsel stating how the information contained in exhibit A was prepared, states that in certain counties observers reported irregularities which are reflected in exhibit A on separate sheets for some but not all of the counties. As noted earlier, this additional information relates to ineligible voters, the ineligibility being for various reasons listed on the tabulation forms. Petitioners contend that the total number of such voters, as shown in exhibit A, is 1,645. The petition does not allege, nor does exhibit A suggest, for whom these votes were cast. Also, it is not alleged that it cannot be ascertained for whom these votes were cast. Where it cannot be

determined for whom unqualified voters voted, the number of votes cast by unqualified voters must be apportioned to the candidates in that proportion which the number of votes cast for each candidate bears to the total number of votes cast in the precinct. *Neff v. George* (1936), 364 Ill. 306, 312.

In our case, although exhibit A may show that the number of alleged unqualified voters totals 1,645, neither the complaint nor the exhibit alleges how these votes should be apportioned. Also, nothing in exhibit A shows what the total vote was in each precinct wherein such votes were cast, nor does exhibit A show what vote was cast for Thompson and Ryan and for Stevenson and Stern in each of these precincts. There are, therefore, no facts alleged from which the court can determine the number of votes that should be deducted from the total vote of these candidates. In the memorandum filed in support of the petitioners' opposition to the Thompson-Ryan motion to strike the petition it is stated that these votes were cast in precincts wherein Thompson-Ryan had a substantial plurality and a proportionate reduction would result in a loss to Thompson-Ryan of 1,176 votes and a loss to Stevenson-Stern of 469 votes. However, the suggestions contained in the memorandum of the petitioners are not verified by the petitioners. They are not a part of the petition or exhibit A, and they do not purport to be an amendment to the petition. We cannot accept the suggestion in the memorandum as part of the pleading which we are examining. Neither the petition nor exhibit A contains allegations which show that there should be any reduction in the Thompson-Ryan total vote as a result of the votes that allegedly were cast by ineligible voters.

Before the apportionment rule can be applied, it is necessary to establish that it cannot be ascertained how the ineligible voters voted. (*Smoda v. Gallagher* (1952), 412 Ill. 271, 274; *Neff v. George* (1936), 364 Ill. 306, 312.) Therefore, not only does the petition fail to allege facts from which it can be ascertained how the alleged illegal votes are to be appor-

tioned, but also the petition fails to allege that it cannot be ascertained how any of the ineligible voters voted, a fact necessary to be established before the apportionment rule can be applied.

Petitioners, in their memorandum, have attempted to project the percentage of loss of vote by Thompson and Ryan in the precincts where discovery proceedings were conducted to other precincts in each of the election jurisdictions challenged. The statute does not permit such a projection but requires that the petitioners allege the specific precincts wherein the mistake, fraud or irregularities relied upon were believed to have occurred.

Not only are we governed by the specific pleading requirements of *Zahray*, but we are also governed by the limitations of the statute. An election-contest case is a special statutory proceeding and the procedures prescribed by the statute must be strictly followed. (*Patterson v. Crowe* (1944), 385 Ill. 514, 518.) We have noted several times in this opinion that sections 23—1.2(e) and (g) require specific allegations as to precincts and as to the mistake, fraud or irregularities or other grounds relied upon. In addition to the specificity requirements of the statute, under *Zahray* the petition must contain a positive and clear assertion, allegation or claim that an election contest will change the result of the election or allegations of fact showing such a result.

The well-pleaded allegations of the petition do not support a reduction in the Thompson-Ryan vote for alleged identifying marks on ballots, for ballots which contain only part of a judge's initial, or for votes allegedly cast by ineligible voters. The well-pleaded allegations show, subject to proof, at most that the Thompson-Ryan vote should be reduced by 2,640 votes for uninitialed ballots and 25 votes for improper duplicate ballots and should be increased by 14 votes because of error in counting. The net decrease in the Thompson-Ryan vote in the precincts alleged, subject to proof, is 2,651. The official proclamation declaring the

results of the election shows that Thompson and Ryan had a plurality of 5,074 votes.

We have noted above that the discovery proceedings were conducted in precincts designated by the petitioners in 70 counties. These precincts naturally were chosen by petitioners because they were most likely to yield results favorable to them. An election contest, however, is not a one-way street. If the motion before us were denied, Thompson and Ryan would have the right to challenge the results in precincts likely to yield results favorable to them. These would undoubtedly offset some, if not all, of the votes petitioners claim they have gained. Even limiting the contest to a consideration of the precincts petitioners have chosen, they have not alleged facts which demonstrate that they can overcome the plurality of Thompson and Ryan.

The petition lacks a positive and clear assertion that an election contest will change the result of the election, and it does not contain allegations of fact sufficient to support a change in the result. The allegations of the petition are not sufficient to enable the petitioners to maintain a statewide election contest under the statute.

We again emphasize the magnitude of the undertaking if a statewide election contest were conducted. Between the petition filed by the petitioners and the pleadings that may be filed by Thompson and Ryan, it is conceivable that every ballot cast in the election held on November 2, 1982, would have to be examined. The cost of such an undertaking and the disruption to local election machinery would be substantial. Also, as noted earlier, until the matter is finally resolved serious consideration may not be given to the many problems confronting this State—either by the legislature or by the Governor. This is not to say that statewide contests cannot be permitted. The Constitution provides otherwise. However, before an undertaking of this magnitude and its consequences are imposed upon this State, the petitioners must show more than a mere desire to have a recount of the

votes and a reexamination of the ballots which they hope will show a different result than officially proclaimed.

The motion to strike the "Petition Of State Election Contest" is allowed. Any party wishing to file a petition for rehearing shall file the same within 10 days from the date of the filing of this opinion.

*Motion allowed.*

JUSTICES WARD, GOLDENHERSH, and CLARK, dissenting:

There is probably no proposition more firmly established in the decisions of this court than that the court will consider the constitutionality of the statute only when it is essential to the disposition of the case. The majority seriously understates the unwillingness of this court to nullify enactments by the General Assembly. It is obvious from the opinion that the majority could dispose of this matter by allowing the motion to strike for the statutory reasons it offers. Illustrations that this court will not seek out constitutional issues can probably be found in almost every volume of the reports of this court.

The following random illustrations from our cases show clearly that the majority is seriously deviating from the course normally followed by this court. We should observe that in these cases, as is normally the situation, the question of constitutionality was raised by one of the parties. It was not volunteered by the court.

> "The constitutionality of a statute will *never* be determined when the cause in which its determination is sought may be finally disposed of without such determination." (Emphasis added.) (*Cohen v. Lerman* (1951), 408 Ill. 155, 158.)

> "*A cardinal canon of statutory construction is that courts do not pass upon the constitutionality of parts of statutes not essential to the determination of questions before them.*" (Emphasis added.) (*People ex rel. Barrett v. Logan County Building Loan Association* (1938), 369 Ill. 518,

528.)

"It is well settled that constitutional questions will not be decided unnecessarily." (*Haughton v. Haughton* (1970), 76 Ill. 2d 439, 448.)

"While we agree that the constitutional questions arising from the procedure followed in this case are sufficient to warrant a direct appeal, we do not deem it essential to decide such questions in order to adequately dispose of the problem presented. *It is the established rule of this court that a constitutional question will not be considered if the case can be decided without doing so.* [Citations.]" (Emphasis added.) (*In re Estate of Ersch* (1963), 29 Ill. 2d 572, 576-77.)

"We will not recite the appellant's argument challenging the constitutionality of the Act, for which we reach a conclusion without the necessity of considering that issue. This court has often said that constitutional questions will not be considered if the cause can be determined on other grounds." (*Exchange National Bank v. Lawndale National Bank* (1968), 41 Ill. 2d 316, 320-21.)

"*But the judicial power to determine the constitutionality of legislation is to be exercised only when it is essential to the disposition of a case.* Here the purpose ascribed to the General Assembly is an unusual one, and one which raises doubts as to the statute's validity. We are unwilling to assume that purpose unless the language of the statute clearly asserts it." (Emphasis added.) (*Donoho v. O'Connell's, Inc.* (1960), 18 Ill. 2d 432, 436.)

"We pass upon constitutional issues only where the cause cannot be decided on other grounds." (*Howard v. Lawton* (1961), 22 Ill. 2d 331, 334.)

"We will not entertain constitutional questions if the cause can be determined on other grounds." (*People v. Fleming* (1971), 50 Ill. 2d 141, 144.)

"[W]e will consider that question only when necessary for the determination of the case. [Citations.] We find it unnecessary to the disposition of this case to consider the constitutionality of the cited sections of the Tort Immunity Act." *Stigler v. City of Chicago* (1971), 48 Ill. 2d 20, 22.

The majority, nevertheless, *sua sponte*, and undaunted by

the court's precedents, has raised the question of the constitutionality of the statute under which this action is brought. In support of this action it cites *Welton v. Hamilton* (1931), 344 Ill. 82, and *Chicago & Eastern Illinois Ry. Co. v. Miller* (1923), 309 Ill. 257. Even a cursory examination of these two opinions demonstrates that they are not authority for the proposition that a constitutional objection not raised by the parties, and therefore waived, should thereafter be raised by the court *sua sponte*. *Chicago & Eastern Illinois Ry. Co. v. Miller* involved the question whether payment of certain fees to the Commerce Commission waived the right to thereafter question the validity of the statute. The rationale of the decision was that the action taken was under duress and that "[c]onduct under duress always involves a choice but this court has held that the making of a choice under such circumstances does not estop the person acting under duress from later asserting his rights." 309 Ill. 257, 260.

*Welton v. Hamilton* involved a matter of jurisdiction, and as the court there said, "[I]t is the principle which does not require the citation of authority that jurisdiction of the subject matter cannot be waived ***." (344 Ill. 82, 96.) In contrast are the holdings of this court in *People v. Luckey* (1969), 42 Ill. 2d 115, *People v. Hale* (1964), 31 Ill. 2d 200, *People v. Orr* (1956), 10 Ill. 2d 95, *People v. Cosper* (1955), 5 Ill. 2d 97, *People v. Brand* (1953), 415 Ill. 329, and *People v. Rohde* (1949), 403 Ill. 41, which have consistently held that a constitutional issue not raised by the parties is waived.

The majority also defensively states: "Nor is our *sua sponte* consideration of the constitutional issue unprecedented, for in *People ex rel. Peoria Civic Center Authority v. Vonachen* (1975), 62 Ill. 2d 179, 181, this court on its own initiative considered a constitutional question not raised by the parties and held the governing statute unconstitutional." (Slip op. at 3.) The citation of *People ex rel. Peoria Civic Center Authority v. Vonachen* and the majority statement regarding it are inexplicable. The court did not consider the

constitutional question *sua sponte*. In language completely plain and clear the opinion in *Vonachen* states that one of the parties, the respondent, and not the court, made the contention that the portion of the involved statute violated our constitution. The court's opinion reads:

> "*A number of contentions are made by the respondent in defense of his refusal to execute the bonds, and one of them, we judge, is dispositive of this action. It is that a portion of the Act* (though the portion we rely on is not the one on which the respondent bases his argument) *violates that part of section 8(d) of article IV of the Constitution which provides*:
>
> > 'A bill expressly amending a law shall set forth completely the sections amended.' " (Emphasis added.) (62 Ill. 2d 179, 181.)

This court held that the statute was indeed "in violation of our constitution's requirement (art. IV, sec. 8(d))" (62 Ill. 2d 179, 183), the section that the respondent contended was violated.

In *Vonachen* the action was brought shortly after the Act's passage, and the unconstitutionality of the statute was most likely alleged so that an opinion would be handed down by this court resolving any constitutional questions. It is customary for an action to be brought shortly after a bill is passed and signed that creates an authority to sell bonds in order to build or repair public buildings. Once a statute like the one challenged in *Vonachen* is upheld, the marketability of the bonds is assured. It is apparent that the action was brought for the sole purpose of raising the constitutional issue.

The *Vonachen* opinion explains that the respondent contended that the statute was unconstitutional and that the court considered not only the section of the statute the respondent complained of but another section as well. This accounts for the excruciatingly careful statement of the majority in this opinion that "this court on its own initiative considered a constitutional question." (93 Ill. 2d at 471.)

That statement can be misleading. An examination of the briefs in the files of the clerk of this court discloses that the respondent in his brief made *three* separate contentions that the statute was unconstitutional. He contended that (1) the Act violated the requirement of section 8(d) of article IV of the 1970 Constitution, which provides that a bill shall be read by title on three different days in each house; (2) the Act expressly amended the law without setting forth completely the sections amended as required by section 8(d); and (3) the Act concerned multiple subjects in violation of section 8(d). The majority should have acknowledged that the contention of unconstitutionality was made by one of the parties, the respondent. This critical fact is omitted in the majority's opinion. The citation of *People ex rel. Peoria Civic Center Authority v. Vonachen* simply emphasizes the majority's breach of this court's precedents and the accepted judicial doctrine followed from the beginnings of the Republic. See *Rescue Army v. Municipal Court* (1947), 331 U.S. 549, 568, 91 L. Ed. 1666, 1677-78, 67 S. Ct. 1409, 1419, where the Supreme Court of the United States said: "From *Hayburn's Case*, 2 Dall. 409 [1792] to [the present], this Court has followed a policy of strict necessity in disposing of constitutional issues." See also Nowak, Rotunda & Young, Constitutional Law 84 (1978).

It is important, we believe, to stress what the majority does acknowledge, namely, that no mention whatever was made of unconstitutionality in the lengthy briefs submitted by the parties. Constitutionality was not even obliquely referred to in the extended oral argument before the court. At no time during that oral argument did any member of the majority raise a question of constitutionality. The constitutionality of the statute was never doubted. At whatever time the majority did decide to raise the question of constitutionality, it did not decide also, in fairness and to insure a proper disposition of this case of critical importance, that the attorneys for Stevenson and Stern should be given an opportu-

nity to brief and argue the question. Because of this infelicitous handling of a question never before presented in the history of our State the petitioners' rights have been extinguished by the majority on a point the petitioners were not given an opportunity to brief or argue. Some will suggest that future historians of the court are likely to regard the manner of disposition with some wonder.

We would note that Thompson and Ryan are represented by four law firms. As we have noted, none of the attorneys questioned the constitutionality of the statute that the majority finds defective. It is certain that responsible, competent attorneys at the outset would consider the validity of the statute under which the petitioners were proceeding. It is certain that the attorneys here found that the statute was not vulnerable to constitutional challenge because of *People ex rel. Rice v. Cunningham* (1975), 61 Ill. 2d 353. That case observe that the attorneys for Thompson and Ryan, with greater perceptiveness than that of the majority, deemed that it could not be plausibly contended that the General Assembly enacted the important statute in question in 1977 in complete disregard of the court's holding in 1975 in *People ex rel.Rice v. Cunningham* (1975), 61 Ill. 2d 353. That case was decided September 29, 1975. Public Act 80—883, enacting the statute under which this proceeding was brought, was passed in the General Assembly July 1, 1977, and approved by Governor Thompson on September 21, 1977. We must presume that both the General Assembly and the Governor were aware of *Cunningham* and perceived that the validity of this statute was not affected by *Cunningham.*

The attorneys for Stevenson and Stern find themselves in the position of having lost their case without having had really an opportunity to argue it. Article I, section 12, of our constitution states: "Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives ***." It seems that this constitutional assurance of a remedy affords, at the very least, an opportunity to Stevenson

and Stern to be heard before a court declares they have no remedy for what they claim is a grievous injury to them and, more importantly, to the citizens of this State.

Assuming, *arguendo*, the propriety of the *sua sponte* consideration of the issue, the majority's reliance on *People ex rel. Rice v. Cunningham* (1975), 61 Ill. 2d 353, is misplaced. The majority makes much of the fact that absent a statute the courts are without jurisdiction to consider an election contest. The statutory provision held invalid in *Cunningham* purported to provide the procedure for determining whether a death penalty should be imposed. This would, of course, apply in a cause of action in which the circuit court, by virtue of article VI of the Constitution, was vested with original jurisdiction. Assuming the accuracy of the majority's contention that there is no jurisdiction absent the statutory provision, there appears to be no constitutional impediment to the General Assembly's requiring that the jurisdiction thus granted be exercised by a three-judge panel rather than a single circuit judge. This does not create a new court, nor does it affect the judgment, which, under the statute, is a judgment of the circuit court. (Ill. Rev. Stat. 1981, ch. 46, par. 23—1.10.) It should be duly noted that a provision for a three-judge panel is no stranger to our law and that similar provisions are found in the North Shore Sanitary District Act (Ill. Rev. Stat. 1981, ch. 42, par. 276.99 *et seq.*) and in the Sanitary District Act of 1917 (Ill. Rev. Stat. 1981, ch. 42, par. 298.99 *et seq.*). These statutes provide for three judges to sit as boards of commissioners in the organization of districts under these acts (Ill. Rev. Stat. 1981, ch. 42, pars. 277, 299), and we fail to perceive any distinction between the statutory provisions containing these provisions and the statute here under consideration. The majority holds that the prior statute which these sections repealed would not be revived if we held the present statute unconstitutional because the prior statute provided for a decision by the legislature in election contests, whereas the 1970 Consti-

tution provides that election contests shall be heard by the courts in a manner provided by law. (Ill. Const. 1970, art. V, sec. 5.) If neither statute is constitutional, it appears that Mr. Stevenson and Ms. Stern would have no means under the Constitution to contest the results of the election. This would result in a blatant denial of due process.

One of the stranger aspects of the majority opinion follows its holding that the statute is unconstitutional and thus void. That should end this case. The majority, nevertheless, then goes on to point out what it perceives to be defects in the petition and reasons why the petition does not satisfy the statutory requirements. If the statute is void, it obviously is unnecessary to talk about the statutory requirements. It is not only unnecessary but it is unfair to the petitioners. If a petition is insufficient in the mind of the court and fails to satisfy the statutory requirements for the petition, a petitioner ordinarily can move for leave to amend the petition and correct the defects perceived by the court. The petitioners here cannot do this. They cannot defend the petition they filed, and they cannot respond to the criticism by the majority of their petition; they cannot show that, in fact, it satisfied all the statutory requirements. The reason they cannot is because the majority has declared the statute unconstitutional and void. Thus, the petitioners are in the rather incredible and certainly unenviable position of having the majority critically dissect their petition and declare it invalid without the petitioners having any opportunity to show that the majority is in error.

The majority, although conceding the petition contains the allegations required by the statute, has concluded that our decisions required the petition to be held insufficient. It cites *People v. Bernette* (1964), 30 Ill. 2d 359, as authority for the proposition that a statute should not be construed to effect a change in the settled law of the State unless its terms clearly require such a construction. The act of the General Assembly in this instance clearly requires such a

construction. Prior to the enactment of the statute in its present form section 23—13 of the Election Code governing statewide contests (Ill. Rev. Stat. 1975, ch. 46, par. 23—13) contained the provision for a notice of intention to contest the election "expressing the points on which the same will be contested." Section 23—20 (Ill. Rev. Stat. 1975, ch. 46, par. 23—20) governing other contests, provided for the filing of a petition "in writing setting forth the points on which he will contest the election." It is significant that section 23—20 continues to provide for "a petition, in writing, setting forth the points on which he will contest the election" whereas section 23—1.2 (Ill. Rev. Stat. 1981, ch. 46, par. 23—1.2) provides specifically the allegations which must be set forth in the petition in a statewide election contest.

In holding the petition insufficient the majority professes to place great reliance on *Zahray v. Emricson* (1962), 25 Ill. 2d 121. Even a cursory reading of *Zahray*, however, demonstrates beyond question that the portion of the opinion upon which the majority relies is *dictum*. The case was decided on the grounds that the plaintiffs had not made out a *prima facie* case entitling them to a recount, and the court having decided that, there was no reason to discuss the question of the sufficiency of the plaintiffs' petition. We submit that the majority's quotations from *Zahray* are selective, fragmentary and misleading. They fail to show the complete inadequacy of the petition the court considered there. The court, describing the complaint, said in *Zahray*:

"The amended petition in this case falls far short of affording a basis for the contest sought. It neither alleges that the irregularities complained of changed the result of the election, nor does it allege facts which show that the irregularities would have such a result, and which if proved would render it the duty of the court to declare a defeated candidate elected. The petition does not set out how many votes were cast in the election, how many votes were received by any of the candidates, nor allege that votes cast for one candidate were wrongfully counted for another, and for all that appears in the petition the differ-

ence in votes may have been so great that none of the irregularities alleged could have affected the outcome. Indeed, the prayer of the petition recognizes this as true, for it asks only that the candidates who appear to be elected be declared as elected by the court. Petitions with the same deficiencies were held insufficient in *Conway v. Sexton,* 243 Ill. 59, 63, and *People ex rel. Nourie v. Peltier,* 265 Ill. 630, and we think the same result obtains here. (See also: *McQuagge v. Conrad,* (Fla. 1953,) 65 So. 2d 851; *Suttle v. Sullivan,* (Colo. 1955,) 283 P.2d 636; *Lammot v. Walz,* (Del. 1954,) 107 A.2d 905; 29 C.J.S., Elections, sec. 268b(4).) In the absence of an allegation that the results of the election were changed by the alleged irregularities, or facts showing such a result, the petition assumes the proportions of an exploratory process to which neither our courts nor election officials should be subjected." 25 Ill. 2d 121, 124-25.

As we shall show later in this dissent, none of the glaring deficiencies of the petition in *Zahray* appear in the petition here.

The majority cites *McCaslin v. Moore* (1966), 67 Ill. App. 2d 355, but the decision is not authority for the proposition for which it is offered. In describing the petition filed, the court said:

"The amended petition in this case falls far short of affording a basis for the contest sought. It neither alleges that the irregularities complained of would change the result of the election, nor does it allege facts which show that the irregularities would have such a result, and which, if proved, would render it the duty of the court to declare a defeated candidate elected. The petition fails to set out how many votes were cast in the election, how many votes were received by any of the candidates, and for all that appears in the petition the difference in votes may have been so great that none of the irregularities alleged could have affected the outcome." (67 Ill. App. 2d 355, 358.)

As we will make unmistakably clear, there is no similarity between that petition and the petition filed in the matter here. Neither is *Loudon v. Thompson* (1971), 1 Ill. App. 3d

809, referred to by the majority, authority for the proposition cited. It is clear from the opinion that the petition failed to allege that a recount would change the results of the election. The petition before us alleges that clearly.

As we have observed above, the majority states: "It must be presumed that the legislature acted with knowledge of the requirements of these decisions when this statute was enacted." (93 Ill. 2d at 483.) It must also be presumed that the General Assembly is sufficiently perceptive to understand that a line of appellate court "authorities" based upon *dictum* in an opinion of this court is hardly a reliable basis upon which to form a judgment or make a determination as to the status of the law in this jurisdiction.

An examination of the petition here shows that it does not suffer from the deficiencies of the petitions involved in *Zahray* and the other decisions cited by the majority. The petition alleges:

"2. The results of the election for the offices of Governor and Lieutenant Governor, held at the General Election of November 2, 1982, as certified in the official proclamation issued by the State Board of Elections on November 22, 1982, are as follows:

| | |
|---|---|
| James R. Thompson and George H. Ryan (Republican) | 1,816,101 |
| Adlai E. Stevenson and Grace Mary Stern (Democrat) | 1,811,027 |
| Bea Armstrong and David L. Kelley (Libertarian) | 24,417 |
| John Roche and Melvyn Jones (Taxpayers) | 22,001 |

\* \* \*

4. Each petitioner believes that mistake or fraud has been committed in the casting, counting, return and canvass of the votes and that there was other irregularity in the conduct of the election for Governor and Lieutenant Governor at the General Election of November 2, 1982, including, without limitation, the following:

(a) Tabulating errors occurred which resulted in the certification of incorrect vote totals;

(b) Ballots were counted which should not have been counted because they did not contain the initials of an election judge in accordance with law;

(c) Ballots were counted which, under law, should not have been counted because they contained marks identifying and distinguishing them from other ballots;

(d) Persons were permitted to vote who, under law, should not have voted because they were not registered voters;

(e) Persons were permitted to vote who, under law, should not have voted because they had not submitted valid ballot applications;

(f) Persons were permitted to vote by absentee ballot who, under law, should not have been permitted to do so because they had not submitted valid absentee ballot applications or were not entitled to vote absentee under applicable law;

(g) Persons were permitted to vote on the basis of affidavits who, under law, should not have voted because such affidavits were unsigned, incomplete or unaccompanied by legally required supporting affidavits;

(h) Duplicate ballots were counted, which, under law, should not have been counted because (i) they did not conform to the original ballot or (ii) no identifiable original ballot was retained or (iii) they were not identified as duplicates;

(i) Ballots were counted which, under law, should not have been counted because secure custody of the ballots by election authorities had not been maintained prior to the counting of the ballots;

(j) Ballots were rejected as defective and not counted which, under law, should have been counted because they were not defective;

(k) Absentee ballots were rejected and not counted which, under law, should have been counted because they complied with legal requirements; and

(l) Ballots were counted which should not have been counted because they had been improperly altered by election officials.

\* \* \*

7. As a consequence of the mistake, fraud or irregular-

ity alleged herein, the result of the election for Governor and Lieutenant Governor held at the General Election of November 2, 1982, as officially proclaimed, was incorrect.

8. Petitioners believe that ADLAI E. STEVENSON and GRACE MARY STERN did receive the highest number of votes for the offices of Governor and Lieutenant Governor at the election for those offices held at the General Election of November 2, 1982."

In addition to the foregoing, voluminous exhibits attached to the petition show that many ballots were not correctly counted and that a recount would show that the petitioners had won the election.

The majority says that the election-contest statute is to be construed so that if a candidate considers that he was properly elected to office, and the office is denied to him through mistake, fraud or irregularity in the election, the candidate must do, in practical terms, the impossible. He must be able within 15 days of the proclamation of the result of the election to demonstrate, through what is in effect his own recount, from the recorded election results in 102 counties that he is being wrongfully deprived of the office to which he was, in fact, elected. In other words, the petitioner has to conduct what is a recount within 15 days so that he will be able to demonstrate in a verified petition that he was in fact elected to the office. It is impossible for a candidate to conduct discovery in every jurisdiction in such a short period of time. The result of discovery is inevitably a limited sampling of precincts in various counties. If such a limited sampling produces errors and irregularities in a number sufficient to approach the total margin of the statewide election, it is illogical to prohibit a statewide contest because specific errors were not demonstrated that would changed the result. If that were the case then what would be the purpose of a recount? That obviously would defeat the purpose of the statute, which is to provide for a recount. The burden placed upon a petitioner is impossible to sustain, and the majority makes the remedy provided under the statute

an illusion.

The majority states that if a petitioner is not able within 15 days to show facts sufficient to support a change of the election, no contest is permitted. Discovery is, of course, a means a petitioner may use to attempt to show mistakes, fraud or irregularity. Significantly, the last paragraph of section 22—9.1, referring to discovery in election cases, states: "Such count shall not be binding in an election contest brought about under the provisions of the Election Code, shall not be a prerequisite to bringing such an election contest, shall not prevent the bringing of such an election contest, nor shall it affect the results of the canvass previously proclaimed." (Ill. Rev. Stat. 1981, ch. 46, par. 22—9.1.) The statute says that discovery need not be a prerequisite to initiating an election contest and, indeed, if the results of the discovery are not sufficiently favorable, the discovery effort shall not prevent the bringing of such an election contest. The majority requires the petitioner to demonstrate factually that the election result would have been different. After an extensive discussion the majority reaches the conclusion that the petition fails sufficiently to allege that the ballots contained improper identifying marks. In the course of the discussion the majority appears to make certain factual determinations which would be better made by the statutory panel after hearing evidence on the matter. The majority states: "It is true that whether a ballot contains disqualifying distinguishing marks is usually a question of fact, and it is so stated in the cases cited above." (93 Ill. 2d at 486.) Nevertheless, the majority proceeds to examine the evidence and finds that the allegations are not specific enough to show that the petitioners are entitled to an increase in their vote because of ballots with invalidating and distinguishing marks. This question, too, is best determined following a hearing to determine the facts of the matter.

Concerning the Lake and Du Page counties' ballots the majority makes much of the fact that certain of the allega-

tions contained in the petition do not appear to be properly verified, but nevertheless readily accepts as unquestioned fact the explanation contained in respondents' memorandum concerning those ballots. This is an inappropriate manner in which to determine the issue presented. It should properly be decided after the hearing of evidence. To rely on the "Thompson-Ryan" explanation and the fact that the explanation "has not been disputed by the petitioners" (93 Ill. 2d at 487) is a particularly inappropriate manner in which to decide the factual question presented at the pleading stage in this case.

The majority also finds that the allegations of the petition are insufficient because of its failure to allege how 1,645 votes should be apportioned. The majority cites no authority for the proposition that an allegation is necessary on this particular matter. This is a matter of evidence, not an allegation which is to be contained in the petition. Were it necessary for the petitioners to make the allegations as the majority implies, it would, in effect, require them to plead all their evidence in a statewide contest, in a petition filed within the 15 days of the certification. This, of course, is unreasonable and indefensible. We note, too, that the majority states concerning this matter, "We cannot accept the suggestion in the memorandum as part of the pleading which we are examining." (93 Ill. 2d at 489.) In contrast, and without explanation, the majority accepts the explanation in respondents' brief concerning the Lake and Du Page ballots. We fail to see why equal consideration should not be given to the explanation provided in this instance by the petitioners.

The majority gives as reasons for holding the petition insufficient that an election contest would be extremely time consuming, inconvenient and expensive. (This seems to indicate that even if the majority did not hold the statute to be unconstitutional, the petitioners would not have been permitted to amend their petition. We say this because if there were to be an amending of the petition to satisfy the majori-

ty's criticisms, there still would be a time-consuming, inconvenient and expensive election contest.) Though unintended, the majority may be dangerously close to giving the appearance of providing comfort to those who would support only a convenient and affordable justice. These should not be the criteria for determining whether there should be a recount. (The expense would be principally the unavoidable expense of the public employees' salaries.) Our society does not fix affordable expense as a standard for doing justice or, in particular, for insuring the integrity of the electoral process. This court has not served under such a flag. This was a close and, of course, an important election. Over 3.6 million votes were cast, and Thompson and Ryan were proclaimed to be elected by a margin of 5,074 votes. Who were the elected Governor and Lieutenant Governor of our State is obviously of high importance to the petitioners and the respondents. But of first importance is a just disposition and the insuring of the integrity of the electoral process of our State. It may be that a recount would not have changed the announced election results, but it will always be uncertain what was the will of the people in the gubernatorial election of 1982.