2022 IL App (1st) 181453-U

No. 1-18-1453

Filed August 18, 2022

Fourth Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 8541 |
| | ) | |
| MARC STEVENS, | ) | Honorable |
| | ) | Patrick K. Coghlan, |
| Defendant-Appellant. | ) | Judge, Presiding |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm defendant's conviction for aggravated domestic battery where the trial court properly found that he did not act in self-defense and the evidence was sufficient to prove his guilt beyond a reasonable doubt despite inconsistencies among the testimony of State witnesses and a conflicting version of events from defense witnesses. The domestic battery statute is not unconstitutionally overbroad as applied when the victim, who was neither related to nor in a dating relationship with the defendant, is found to be a family or household member since she formerly shared a common dwelling with the defendant.

¶ 2     Marc Stevens appeals from his conviction for aggravated domestic battery. He contends

that we should reverse his conviction, arguing that (1) the trial court improperly rejected his claim

of self-defense, and (2) the evidence was insufficient due to inconsistencies in the testimony of State witnesses and conflicting accounts provided by defense witnesses. In addition, Stevens argues that his conviction is unconstitutional as applied to him under the facts of this case. He claims that the statutory definition of "family or household member," which includes persons who "formerly shared a common dwelling," is overbroad when the victim in this case was found to be a family or household member on that basis. We are not persuaded by these arguments and affirm.[1]

¶ 3                                I. BACKGROUND

¶ 4        Following a bench trial, Stevens was convicted of aggravated domestic battery for striking Domonique Wells in the face with a whiskey glass while in front of his home in Country Club Hills, Illinois on May 12, 2017. In summary, the State presented testimony from three witnesses: Domonique Wells, Stephen Hale, and Khalyaan Leeks. These witnesses gave similar accounts in which Stevens, unprovoked, pushed Jacqueline Guider (Jackie) to the ground and swung his whiskey glass, striking Domonique in the face, as she was helping Jackie return to her feet. Stevens, who testified, and his three witnesses—Leonardra Stevens (Lee), Shawn Short, and Theonia Stewart—agreed that Domonique was injured. Their accounts differed from the State's witnesses', however, regarding how the injury occurred. In the defense's version, Jackie first punched or pushed Stevens multiple times before he pushed her in a defensive manner. According to Stevens, he then believed a group was converging to attack him and, as he turned with the whiskey glass in his hand, Domonique "got struck."

¶ 5        To give more context, we first recite the facts that were not in dispute. Stevens and his wife, Leonardra, who goes by Lee, hosted a party in connection with a prom send-off for Lee's daughter, Destiny. The party, which was held primarily outdoors, was attended by 50 to 75 people.

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

In addition to Destiny, Lee has two other adult daughters, Jackie and Khalyaan, who both attended the party. Stevens is not the father of any of Lee's daughters, but he considered himself their stepfather.

¶ 6        Domonique is Destiny's sister. They have the same father, but Lee is not Domonique's mother. Nevertheless, Lee raised Domonique from age five and considered Domonique as her own child. Domonique lived with Stevens and Lee for a few months at their home in Country Club Hills in 2014. She had also resided with them for more than a year from some point in 2012 to 2013 at their previous home. Stevens has no relation to Domonique. Domonique also attended the party and brought a friend.

¶ 7        In the evening, after Destiny had left for her prom, Lee confronted Domonique in front of the house. Lee believed a friend of Domonique's, whom Lee did not know, had entered the house. Jackie and Khalyaan then approached Lee and they began to argue. Lee closed the front door of the house, locked it, and would not let them enter. Stevens, who was nearby, started arguing with Jackie and Khalyaan. At some point, Stevens pushed Jackie and threw his whiskey on her. She fell to the ground. Then, with the glass in his right hand, Stevens struck Domonique on the left side of her face. The glass broke and cut a gash in Domonique's face, which exposed her jawbone and teeth. Stevens left abruptly and went to the rear of the house. The broken whiskey glass was found on the driveway after police arrived. The glass was described as 4 inches high and 3 inches in diameter with a 1½ inch thick base, when it was intact.

¶ 8        Domonique's injuries required internal and external stitching. For six months, she could barely open her mouth and could only consume liquids. She could not smile and had difficulty speaking. The vision in her left eye was also affected and she has a visible scar on her cheek. At the time she testified, she was scheduled to undergo plastic surgery to further repair her wounds.

¶ 9    The evidence differed on the details of the altercation that culminated in Domonique's injury. The State's witnesses, including Domonique, Khalyaan, and Hale, a party attendee, all testified that no one had hit, pushed, or charged at Stevens before he pushed Jackie. In their accounts, Stevens pushed Jackie to the ground, threw his beer bottle, and threw the contents of his whiskey glass at her. According to Domonique, she had knelt to help Jacqueline to her feet. As she was doing so, Stevens punched her with the whiskey glass. Khalyaan and Hale similarly testified that Stevens forcibly struck Domonique with the glass.

¶ 10    In contrast, Stevens testified that after Lee closed and locked the front door on Jackie and Khalyaan, Jackie "just started hollering" at him. As Stevens began walking toward the garage, Jackie "kept getting louder and louder" and hit him two or three times. Stevens admitted that he pushed her, but she was "still coming back." He picked up his glass of Jack Daniel's and threw it on her. According to Stevens, Jackie only fell to the ground after he threw the whiskey. He began walking away and then "saw a bunch of people coming towards [him]," more than five, from various directions. The converging people included friends of Jackie and Khalyaan. By this point, Stevens was standing next to Lee and suggested they "go get some air." Domonique said something prompting Stevens to respond, "you know what Domonique, you are not even part of this family." The "people," according to Stevens, were "still coming." Seeing someone moving from the corner of his eye, Stevens quickly turned to his left while holding his whiskey glass in his right hand and his elbow bent. Stevens testified, "the next thing you know, [Domonique] is down on the ground." Stevens insisted that he was turning, not swinging the glass, and that he did not strike Domonique intentionally. He explained, "when I just turned to basically defend myself, the young lady got struck." Stevens's friend, John Stewart, then walked with him to the rear of the house. John later escorted Stevens to John's home to await the arrival of law enforcement.

¶ 11        Shawn Short likewise testified that Jackie was yelling and hitting Stevens before he pushed her backward. Short was a friend of the family and a photographer who was invited to the party to take photos for Destiny. According to Short, someone pulled Stevens away to separate him from Jackie. Jackie then "advanced towards him." Stevens, who was already holding a beer bottle and whiskey glass, then threw his whiskey on her and Jackie fell. Then, a "barrage" of Jackie's friends "converged" and "advanced" toward Stevens. Once "everyone separated," Short observed that Domonique had a cut.

¶ 12        Similarly, Lee testified that Stevens pushed Jackie "like he was trying to block her" after she hit him. After closing the front door behind her, Lee exited through the back patio, planning to make a trip to a store. She came around to the front and observed the ongoing altercation. According to Lee, Jackie had fallen to the ground and "a whole bunch of people [were] coming towards [Stevens]." Lee did not know who they were. Some friends grabbed Stevens to keep him away from Jackie who was "still trying to come at him." Lee saw Domonique running toward Stevens. Lee attempted to grab and hold her. Stevens was "pushing his hands out to stop people from coming toward him." Lee then noticed blood and that Domonique was holding her face. Lee escorted her inside to a bathroom and discovered that Domonique had been cut.

¶ 13        Theonia Stewart testified that she accompanied Lee as they exited through the patio to make a trip to the store. Theonia[2] heard "commotion" coming from the front of the house. Upon reaching the front, she observed Jackie "charge" Stevens and hit him in the face three times. Stevens tossed his Jack Daniel's in Jackie's face and she fell to the ground. A "crowd" gathered around and closed in on Stevens, who extended his hands. Domonique rushed through and charged

_____

[2]We refer to Ms. Stewart by first name to avoid confusion with her husband, John Stewart.

at Stevens. Then, according to Theonia, Domonique went down and came up holding her face. Theonia then advised her husband, John, to escort Stevens from the scene.

¶ 14    In closing statements, the State argued that Stevens's testimony that he struck Domonique with his glass on accident while turning was not credible, as her severe injury made that explanation implausible. Stevens's counsel argued that the defense witnesses were more credible "grown adults," while the State's witnesses exhibited "the ugliest attitudes" and gave inconsistent testimony on certain details. Counsel also suggested that the State had not proven that Stevens knowingly struck Domonique since the evidence did not reveal he had any conflict with or animosity toward her. Rather, the evidence showed he was arguing and fighting with Jackie. Further, since the defense witnesses corroborated Stevens's account that Jackie had struck him and people were converging towards him, counsel insisted that Stevens's testimony that he struck Domonique on accident while moving to protect himself from the imminent threat he perceived was credible. Or, he contended, such evidence prevented the court from finding Stevens guilty beyond a reasonable doubt. In rebuttal, the State suggested that Stevens struck Domonique while attempting to strike Jackie with the glass, as he had just pushed and thrown whiskey on her. Thus, the State argued Stevens's intent to strike Jackie was transferred to Domonique.

¶ 15    The trial court ultimately found Stevens guilty of two counts of aggravated domestic battery. In announcing its findings, the court thoroughly discussed the evidence and explained its reasoning for how it resolved the issues in the case. The court began by noting that the testimony touched on many collateral matters, which were not relevant to the ultimate issues but were admissible for probing each witnesses' perception or bias. Though the evidence revealed some earlier arguments between some of each side's witnesses, the court found those arguments did not render the State's witnesses biased, as they admitted their own involvement. Additionally, while

there was evidence regarding the consumption of alcohol, the court did not find that anyone was so inebriated that they could not reliably observe or recall events.

¶ 16 The court found that Domonique was a family or household member within the statutory definition since she formerly shared a common dwelling with Stevens. Additionally, the court found that Domonique sustained great bodily harm and permanent disfigurement, but not permanent disability.

¶ 17 Regarding the altercation, the court noted that both the State and defense witnesses testified that Stevens and Jackie were arguing in front of the house, Stevens threw his whiskey on her, and Jackie fell to the ground. But, the court observed, "[a]fter Jackie is pushed down is when the defense witness[es]' stories start to vary and defense witnesses somehow don't see how Domonique got hurt." The court then remarked that among defense witnesses, only Stevens testified as to how Domonique was injured. But his account was contradicted by his own witnesses. Stevens stated that he walked away and spoke to Lee, who was beside him. None of the defense witnesses corroborated that. Rather, Lee and Theonia both testified that Domonique ran past them toward Stevens. Stevens also said he was turning with a bent elbow when he contacted Domonique. Yet, Lee and Theonia both testified that Stevens's hands were stretched out to keep the crowd at bay.

¶ 18 As for Stevens's claim of self-defense, the court stated:

"he never said he was trying to defend himself and that's why he swung the glass in order to do that. Based on the testimony, [Stevens] was not acting in self defense at all. He was turning. He basically testified this was all just a horrible accident.

***

He said [he] was turning because something caught his attention so there was no intent to defend himself. I don't think self defense applies."

¶ 19    Beyond that, the court did not find Stevens's claim that he struck Domonique with his whiskey glass on accident credible. The court commented, "[i]t was almost like Domonique ran herself into his whiskey glass" in Stevens's version. To the contrary, the court found:

"I think it's clear [Stevens] lost his temper. He pushed Jackie down and threw his drink at her. I think he swung at Domonique who was right next to Jackie.

I don't believe [Stevens] walked away. I think that the pushdown and the punch did happen as was described[—]three seconds at most between each other."

In reaching that conclusion, the court noted that the fact that Stevens had to be restrained after striking Domonique belied that it was an accident. In addition, the court observed that no one from the crowd, who was supposedly poised to attack Stevens after Jackie fell, retaliated. Further, the court noted that Stevens's actions immediately afterward, which included tending to his own hand injury and never expressing concern for Domonique, were inconsistent with his claim of an accident. Additionally, the court remarked:

"I don't believe [Stevens's] witnesses were very credible at all, at least not when it got to the part about Domonique being struck. There were some major contradictions and convenient vision problems by the defense witnesses at that point."

¶ 20    In contrast, the court commented as follows regarding the State's witnesses:

"there were a couple differences in the state's witness[es]' account over who was where and who was helping Jackie up. But some of those differences of witness[es]' accounts are explainable maybe to their point of view or maybe to where their specific attention was directed at specific times."

¶ 21        Thus, the court found Stevens guilty of two counts of aggravated domestic battery: one count that specified the aggravating factor of great bodily harm and another count that specified permanent disfigurement. It found Stevens not guilty of a third count, which specified permanent disability. The court also found Stevens not guilty of two charged counts of aggravated battery, as it had determined that the whiskey glass was not a deadly weapon, as specifically alleged in each of those counts. Stevens filed a motion for new trial, which the trial court denied. The court sentenced Stevens to 60 days in the Cook County Department of Corrections and 24 months of probation.[3] Stevens filed a timely notice of appeal.[4]

¶ 22                                    II. ANALYSIS

¶ 23                                    A. Self-Defense

¶ 24        We first address Stevens's claim that the trial court erred in finding that he did not act in self-defense. The State has the burden of proving all elements of a crime beyond a reasonable doubt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009). For an aggravated domestic battery conviction, the State must prove the defendant committed the predicate offense of domestic battery. *People v. Gray*, 2017 IL 120958, ¶ 63. A person commits domestic battery if they knowingly, without legal justification, and by any means causes bodily harm to, or makes insulting or provoking physical contact with, any family or household member. 720 ILCS 5/12-3.2(a)(1) (West 2016). The aggravated form of domestic battery requires proof that the defendant knowingly caused great bodily harm, or permanent disability, or disfigurement. 720 ILCS 5/12-3.3(a) (West

---

[3]The record before us does not contain a transcript of the proceedings on Stevens's motion for new trial and sentencing. However, the court's rulings on those matters are reflected on documents in the common law record.

[4]This appeal was dismissed for want of prosecution in December 2018. This court reinstated the appeal on Stevens's motion in March 2019. After receiving several extensions, Stevens filed his opening brief in November 2021. The State filed its responsive brief in January 2022. Stevens did not file a reply brief.

2016). When a defendant raises self-defense, the State has the additional burden to prove that the defendant's actions were not justified by self-defense. *People v. Lee*, 213 Ill. 2d 218, 224 (2004). For self-defense, a defendant must show: (1) unlawful force threatened against a person, (2) the person threatened was not the aggressor, (3) the danger of harm was imminent, (4) the use of force was necessary, (5) the person threatened actually and subjectively believed a danger existed that required the use of the force applied, and (6) the beliefs of the person threatened were objectively reasonable. *Gray*, 2017 IL 120958, ¶ 50 (citing 720 ILCS 5/7-1 (West 2010)). The State disproves self-defense by negating any one of these elements. *Id.*

¶ 25     When reviewing a fact-finder's rejection of a defendant's self-defense claim on appeal, we do not retry the defendant or reweigh the evidence. *Id.* ¶¶ 35, 51. The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from the facts. *Id.* ¶ 35. Therefore, we will not substitute our judgment for that of the trier of fact on questions involving the weight of evidence or the credibility of witnesses. *Id.* The standard of review is whether, after considering the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that the defendant did not act in self-defense. *Id.* ¶ 51. We will only reverse if the evidence was so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt. *Id.* ¶ 35.

¶ 26     Stevens argues that the evidence showed he acted in self-defense since he and his witnesses testified that Jackie first hit him and both the State's and the defense's witnesses tended to corroborate the presence of a "crowd" that he perceived to be converging to attack him. Based on that evidence, Stevens maintains that Jackie, not he, was the aggressor, and that he reasonably believed he was threatened with imminent harm from the converging crowd. The trial court, according to Stevens, "ignored" the evidence of the threat he perceived and erred by finding that

threat insufficient to justify the use of force in self-defense. He further contends that the court misapplied the self-defense standard to require that he sustain actual force, rather than the reasonable fear of imminent force, before acting in self-defense. Last, Stevens claims the trial court erroneously found that his testimony that he struck Domonique by accident negated his claim of self-defense.

¶ 27        The trial court's extensive remarks explaining the finding of guilt make plain that it did not "ignore" evidence about the crowd converging on Stevens. Nor did the court misapply the law on self-defense. Rather, the court rejected Stevens's self-defense claim because it did not believe his version of events. Stevens testified that he perceived the converging crowd as he was walking away, after he had thrown his whiskey at Jackie and she had fallen. In his account, his whiskey glass struck Domonique as he turned upon noticing someone moving in his peripheral vision. The trial court did not accept that account as true. Instead, the court found:

> "I don't think that this is a case where [Stevens], based on his testimony, was trying to defend himself from this oncoming mob of people or crowd of people and accidentally hit somebody else.
>
> ***
>
> [Stevens] lost his temper. He pushed Jackie down and threw his drink at her. I think he swung at Domonique who was right next to Jackie. I don't believe [Stevens] walked away. I think that the pushdown and the punch did happen as was described[—]three seconds at most between each other."

Thus, rather than ignoring evidence of the converging crowd, the court found that Domonique's injury did not happen the way Stevens said it did. The court did not find that Stevens walked away or perceived a converging crowd as he had testified. Rather, crediting the State's witnesses'

accounts and aspects of defense witness testimony, the court found Stevens, out of anger, pushed Jackie, threw his drink at her, and then immediately swung the whiskey glass that struck Domonique. So even if there was a crowd, the court found that it was not the reason for Stevens's actions. As a consequence of that finding, the court could properly conclude that the State disproved that Stevens believed he was under imminent threat of harm, thereby negating self-defense.

¶ 28 Moreover, it was the trial court's role as trier of fact to resolve conflicts in testimony and determine witness credibility and reach this conclusion. *Siguenza-Brito*, 235 Ill. 2d at 224-25. The trial court was not required to accept as true Stevens's evidence in support of self-defense. *People v. Spiller*, 2016 IL App (1st) 133389, ¶ 27. Instead, it was required to consider the probability or improbability of the evidence, the circumstances surrounding the event, and the testimony of all witnesses. *Id*. We find that the trial court did just that and we will not substitute our judgment for that of the trial court.

¶ 29 Moreover, the evidence was not so unreasonable, improbable, or unsatisfactory to justify a reasonable doubt of Stevens's guilt. Uncontroverted evidence revealed that Stevens argued with Jackie and Khalyaan and threw his drink at Jackie just prior to Domonique's injury. Given that the glass broke and severely cut Domonique's face, it is far more probable that Stevens swung it forcibly in anger than that Domonique ran into the glass accidentally. Other factors tend to support that conclusion, including that Stevens was restrained and escorted to the rear of the house. For these reasons, we find that the trial court did not err in rejecting Stevens's claim of self-defense.

¶ 30         B. Inconsistencies and Conflicting Accounts

¶ 31 Next, Stevens argues that the evidence was insufficient to convict him due to inconsistencies among the testimonies of the State's witnesses. He further argues that the evidence

was insufficient since the defense presented a conflicting version of events. Stevens's brief presents these as distinct claims. However, each claim relates to his initial argument that the trial court should have found that he acted in self-defense. Further, these arguments repeat many of the same points he asserted in that initial argument. The common thread underlying these arguments is his contention that the State's witnesses were not credible.

¶ 32     When a defendant challenges a conviction based on the sufficiency of the evidence, we consider all the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Siguenza-Brito*, 235 Ill. 2d at 224. For the reasons we discussed regarding his self-defense claim, we conclude that a reasonable trier of fact could find, beyond a reasonable doubt, that Stevens did not act in self-defense and committed aggravated domestic battery. A conviction will not be reversed simply because the evidence is contradictory or because the defendant claims that a witness was not credible. *Gray*, 2017 IL 120958, ¶ 35 (citing *Siguenza-Brito*, 235 Ill. 2d at 228). A witness's testimony, including any inconsistencies, is to be evaluated by the trier of fact. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006) ("The weight to be given the witnesses' testimony, the credibility of the witnesses, resolution of inconsistencies and conflicts in the evidence, and reasonable inferences to be drawn from the testimony are the responsibility of the trier of fact."). We reiterate that we will not substitute our judgment for that of the trial court on questions of conflicts in testimony or the credibility of witnesses. *People v. Corral*, 2019 IL App (1st) 171501, ¶ 71.

¶ 33                                C. Constitutionality

¶ 34     Stevens contends that his aggravated domestic battery conviction is unconstitutional as applied to him under the specific facts of this case. He argues that finding Domonique to be a

family or household member on the basis that she formerly shared a common dwelling with him is constitutionally overbroad and violates substantive due process, since the statute provides no time limit to Domonique's status as a family or household member. Stevens points out that Domonique only stayed at his home temporarily on two separate occasions, the first instance for one year and the second for three months. Further, since she was not a blood relative nor in a dating relationship with Stevens, Stevens's relationship with Domonique is unlike the other relationships for which Illinois courts have found that continuing to consider such person a "family or household member" indefinitely furthers the statute's purpose to protect those who are vulnerable to domestic violence. See *People v. Wilson*, 214 Ill. 2d 394, 403 (2005) (finding that applying the domestic battery statute after victim and defendant's dating relationship ended is a valid exercise of the legislature's police power since "the threat of domestic violence does not end when a relationship ends."); see also *Gray*, 2017 IL 120958, ¶ 66 (same for dating relationship that ended 15 years before battery occurred since "[t]he record demonstrate[d] a level of accessibility and familiarity between [the victim] and defendant such that it is reasonable to place [the victim] within the protection of the aggravated domestic battery statute.").

¶ 35       Before addressing the merits of Stevens's claim, we consider the State's argument that by failing to raise this issue in the trial court, Stevens has forfeited the claim and cannot raise an as-applied constitutional challenge for the first time on appeal. There is no blanket rule barring litigants from raising as-applied constitutional challenges for the first time on appeal. Rather, the propriety of appellate review of such claims depends on whether the evidentiary record was sufficiently developed in the trial court to permit such a review. See *People v. Martin*, 2018 IL App (1st) 152249, ¶¶ 12-13 (finding that defendant could raise an as-applied challenge for the first time on appeal when the challenge was based on facts already in the record). Here, Stevens's

as-applied challenge relies on facts already in the record and we fail to see that any further fact-finding would be necessary for our resolution of the claim. See *id.* ¶ 13. Accordingly, we find that Stevens's as-applied challenge is reviewable on appeal.

¶ 36      A statute is presumed to be constitutional. *People v. Clark*, 2014 IL 115776, ¶ 9. Thus, to prevail on a constitutional challenge, the challenging party must clearly establish that the statute violates the constitution. *Id.* "[A]n as-applied challenge requires a party to show that the statute violates the constitution as the statute applies to [them]." (Internal quotation marks omitted.) *City of Chicago v. Alexander*, 2015 IL App (1st) 122858-B, ¶ 36. That is, an as-applied challenge involves "how an enactment was applied in the particular context in which [the challenging party] acted or proposed to act." *Id.* (quoting *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 306 (2008)). Therefore, our review of an as-applied challenge is "dependent on the specific facts and circumstances of the person raising the challenge." *People v. Harris*, 2018 IL 121932, ¶ 39.

¶ 37      "A statutory enactment, though sufficiently clear and precise to withstand a vagueness attack, may nevertheless be impermissibly overbroad if it may reasonably b[e] interpreted to prohibit conduct which is constitutionally protected." *People v. Schwartz*, 64 Ill. 2d 275, 282 (1976). In other words, a statute is overbroad if it prohibits constitutionally protected activity as well as activity that may be prohibited without offending constitutional rights. *People v. Relerford*, 2017 IL 121094, ¶ 50. A statute regulating conduct is overbroad if it (1) criminalizes a substantial amount of protected behavior, relative to the law's plainly legitimate sweep, and (2) is not susceptible to a limiting construction that avoids constitutional problems. *People v. Hill*, 333 Ill. App. 3d 783, 786 (2002).

¶ 38      Here, Stevens does not identify any constitutionally protected behavior criminalized by the domestic battery statute. Nor is it arguable that the statute does so. The only behavior it prohibits

is a crime: battery. Therefore, Stevens cannot establish that the statute is overbroad. Stevens's brief seems to conflate overbreadth with substantive due process. On that issue, he fares no better.

¶ 39       "Pursuant to the State's police power, the legislature has broad discretion to define offenses and prescribe aggravating factors and penalties for offenses." *Gray*, 2017 IL 120958, ¶ 59. The legislature's discretion, however, is limited by substantive due process, "which provides that a person may not be deprived of liberty without due process of law." *Id*. When a challenged statute does not affect a fundamental right, the statute is valid if it passes the rational basis test; that is, we will uphold the statute if it "bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor discriminatory." *Id*. ¶ 60.

¶ 40       Our supreme court has recognized that "[t]he legislature's obvious concern in enacting the domestic battery statute was in curbing the serious problem of domestic violence" and "the threat of domestic violence does not end when a relationship ends." *Wilson*, 214 Ill. 2d at 402-03. Thus, the court has upheld the statute as applied for persons in a former dating relationship to be regarded as family or household members, without a time limit, as rationally related to the purpose of curbing domestic violence. *Gray*, 2017 IL 120958, ¶ 67.

¶ 41       We believe that reasoning is not limited to those in dating relationships but extends to all persons regarded as family or household members under the statute. Stevens does not articulate any reason to make a distinction. To the contrary, this case illustrates that the threat of domestic violence extends to these other relationships. Domonique was not a stranger and far more than a mere acquaintance to Stevens. Lee and Stevens regarded Domonique as a daughter and step-daughter, respectively. Domonique was the sister of Lee's daughter, Destiny. Being her older sister, Destiny invited Domonique to see her off to prom. Neither Stevens nor Lee indicated that Domonique was unwelcome or that her presence was inappropriate. Lee only found objectionable

that Domonique would allow an unintroduced friend inside the house. Further, both Stevens and Lee described Domonique as being "disrespectful" on the occasion. Their testimony suggests they believed Domonique owed them respect due to their close relationship. Moreover, Domonique's injury occurred amid a family quarrel involving Lee's other daughters, Jackie and Khalyaan, in which Domonique felt compelled to come to Jackie's aid. Thus, the record shows "a level of accessibility and familiarity" making it reasonable to place her within the protection of the domestic battery statute. *Gray*, 2017 IL 120958, ¶ 66.

¶ 42      For these reasons, we find that regarding Domonique as a family or household member, when applied to the facts of this case, is reasonable and rationally related to the statutory purpose of curbing domestic violence.

¶ 43                                    III. CONCLUSION

¶ 44      Based on the foregoing, we affirm the judgment of the circuit court.

¶ 45      Affirmed.